WALTER D. WEBSTER, Respondent, *v.* JOSEPH F. ROE, Appellant.

Third Department, May 6, 1925.

**Bills and notes — action against indorser of promissory note — defense of usury — note for $8,800 represented loan of $8,000 — plaintiff's reply alleges that $800 was to represent possible profits on real estate transactions in which makers of note used money — note is usurious.**

The defense of usury interposed by an indorser in an action on a promissory note is sustained by evidence which shows that the note in question for $8,800 represented a loan of $8,000 and that the $800 was the amount that the makers of the note agreed to pay to the payee in addition to the principal and interest, which amount was to be realized from the profits anticipated in a real estate transaction in which the money loaned was to be used by the makers of the note.

APPEAL by the defendant, Joseph F. Roe, from an order of the Supreme Court, made at the Tioga Special Term, duly adjourned by consent to chambers in the city of Binghamton, and entered in the office of the clerk of the county of Broome on the 24th day of December, 1924, denying defendant's motion for judgment on the pleadings. (See 124 Misc. 110.)

An order of the Supreme Court, entered in the office of the clerk of the county of Broome on the 16th day of April, 1924, striking out a part of the plaintiff's reply, was reversed by the Appellate Division upon an appeal by the plaintiff. (See 210 App. Div. 778.)

*Douglas V. Ashley,* for the appellant.

*Merchant, Waite & Waite* [*Frederick Collin* and *Thomas B. Merchant* of counsel], for the respondent.

H. T. KELLOGG, J.:

The complaint set up the making of a promissory note for $8,800 by Erma S. McKeage and B. F. McKeage on November 21, 1923; the indorsement of the note for value by the defendant Roe; the delivery of the note for value to the plaintiff; the non-payment of the note at maturity. It demanded judgment for the principal sum of the note with interest. The answer set up that the note sued upon was given in renewal of two notes made by B. F. McKeage and indorsed by the defendant; that the first note, dated October 1, 1923, was for $5,000; that the second note, dated November 16, 1923, was for $3,800; that the consideration for the first note was a loan of $4,500 made by plaintiff to B. F. McKeage; that the consideration for the second note was a loan of $3,500 to B. F. McKeage; that the notes evidenced a usurious agreement and that the note in suit was void. The plaintiff, in obedience to an order, served a reply. In explanation of the origin of the $5,000 note he alleged

that the defendant and B. F. McKeage represented to him that they were about to close an important real estate deal; that they needed $4,500 to close it; that they would make a profit of $1,500 within a few weeks; that if the plaintiff would advance the needed $4,500, to be handled by McKeage, they would give him $500, as his share of the profits, in addition to returning the amount advanced with interest; that they would presently give him a note for $5,000 with interest representing the sum advanced plus his prospective profit; that the plaintiff in fact advanced $4,500 and took the note for $5,000 and interest in accordance with the understanding thus arrived at. In explanation of the origin of the $3,500 note a similar agreement was set forth. The plaintiff, it was alleged, advanced $3,500 and received a note for $3,800 with interest. The reply also contained such allegations as that the plaintiff agreed with McKeage and the defendant " to join in said real estate enterprise," that he agreed to " come in with them on said deal," and that he " agreed to share in the profits " thereof. These, however, were assertions of mere conclusions. The outstanding facts were that the plaintiff " advanced " to McKeage and the defendant $8,000; that these men promised in any event to repay the $8,000 with interest; that they promised to pay an additional $800 if certain real estate deals were successful. Thus the plaintiff was to get the return of his money with interest despite the possible non-success of the deals. On the other hand, no matter how great the success might be, the additional amount to be received was limited to the lump sum of $800. Moreover, McKeage and the defendant, when the agreements were made, contemporaneously executed and delivered to the plaintiff their ' promissory notes, wherein they unconditionally promised to pay the plaintiff the $8,000 " advanced," plus interest, plus $800. Thus the transactions, at the very outset, were stamped by the parties as none other than loans of money, accompanied by promises of repayment. Terming the transactions " joint ventures," and giving to the $800 bonus the name of " profits " cannot alter the true nature of the things agreed upon and done. The simple set of facts set up, considered apart from the conclusions asserted, in the absence of allegations of fact to induce a contrary conclusion, irresistibly give rise to the inference that the transactions between the parties constituted loans, and that the loans were made at usurious rates of interest.

The case of *Orvis* v. *Curtiss* (157 N. Y. 657), upon which the plaintiff appears confidently to rely, does not seem to us to require in the case at bar a conclusion other than we have expressed. In that case Orvis, the plaintiff, was a member of a stock brokerage

firm.   He agreed with Curtiss, the defendant, to engage in a stock speculation.   The parties were to purchase and sell, during a period of six months, not to exceed 500 shares of stock of a designated corporation.   Orvis was to deposit with his firm, to the credit of himself and Curtiss, $4,500 for each 100 shares of stock which might be dealt in.   Stocks were to be bought and sold upon the joint order of the parties or upon the order of Curtiss alone.   Curtiss agreed to make certain deposits in the joint account towards the purchase and sale of the stocks.   Orvis agreed that the account would be carried for six months, and agreed also that, if the parties were called upon to take up the stocks which might be dealt in, he would advance the additional moneys necessary there- for.   All profits upon the transactions were to be equally divided.   Curtiss guaranteed that Orvis in any event would net a $5,000 profit on the transactions which might be had.   The parties engaged in the speculations agreed upon with the result that heavy losses were incurred.   At the conclusion of the transactions the parties made such a settlement of their mutual accounts that the defendant Curtiss gave to the plaintiff Orvis the note in suit.   It was held that the parties had engaged in partnership transactions; that no loan of money was involved; that the plaintiff might recover upon the note.   The points of difference between the *Orvis* case and the case at bar are many.   (1) Orvis transferred no moneys to Curtiss. He merely deposited moneys in an account kept with his own firm. The firm, rather than Curtiss, thus became a debtor to Orvis. In our case the plaintiff, advancing moneys to McKeage and the defendant, parted with all title and possession.   (2) Orvis and Curtiss set up a common fund and with this fund bought stocks which they commonly owned.   In our case the facts alleged do not justify the inference that there was a common fund or common property.   (3) Curtiss made promises in addition to making deposits of money.   Our plaintiff made no promises whatsoever. The defendant and McKeage made all the promises while the plaintiff merely parted with money.   (4) The relation of principal and agent existed between Orvis and Curtiss while no such relation- ship, so far as appears, existed between the parties in our case. (5) Orvis as well as Curtiss, in all transactions with third persons, would have been liable upon all obligations incurred.   It does not appear that our plaintiff would have thus been liable.   (6) Orvis was to share equally with Curtiss in all profits made.   In our case, if the real estate deals were successful, the plaintiff was to receive, not an aliquot share of the profits, but the lump sum of $500.   Finally, the note given by Curtiss to Orvis was executed and delivered, not contemporaneously with the agreement, but

after all transactions had been closed and a settlement had been made. Thus, irrespective of the nature of the original agreement, a binding accord and satisfaction was entered into between the parties. In our case the notes were given at the very time when the contracts were made and thus from the beginning the plaintiff assumed the role of a creditor while the defendant and McKeage wrote themselves down as debtors. The case of *Browne* v. *Vredenburgh* (43 N. Y. 195), on the other hand, is directly in point. In that case one Brinckerhoff advanced moneys to one Browne for the purposes of a business conducted by the latter. Browne agreed that Brinckerhoff, during a period of five years, should receive one-quarter of the profits of his business. At the end of five years Brinckerhoff was to have returned to him the principal sum loaned. If the profits received by Brinckerhoff were less than the accrued interest on the loan Brinckerhoff was to receive in addition that sum of money which would make him good for interest at the legal rate. Otherwise Brinckerhoff was to receive no interest. It was held that the transaction was a loan having its source in a usurious agreement. The court said that " when a lender stipulates for a contingent benefit beyond the legal rate of interest, and has the right to demand the repayment of the principal sum with the legal interest thereon, in any event, the contract is in violation of the statute prohibiting usury, and void."

The plaintiff contends that the occurrence of the event, upon which the plaintiff's right to the additional sum of $800 depended, namely, the successful conclusion of the real estate deals, might have been averted by the defendant and McKeage; that they might at will have abandoned the real estate deals; that it was thus within their power to prevent the plaintiff from collecting more than the legal rate of interest; that the agreements were, therefore, not usurious. The case of *Diehl* v. *Becker* (227 N. Y. 318) constitutes a complete answer to this contention. In that case the plaintiff loaned $5,000 to one Hoffmann. Hoffmann agreed to repay the moneys loaned, with legal interest. He also agreed that if he made a lease or sale of certain patent rights owned by him within a certain period of time he would pay the plaintiff an additional sum out of the moneys received therefor. Notwithstanding the fact that Hoffmann might or might not, as he desired, sell or lease the rights, the court held that the transaction was usurious. The court said: " It is true he might not sell them. But in any event the plaintiff was entitled to his principal and interest and in addition thereto he acquired this contingent right. It was a valuable right. He acquired it under the original contract as part compensation for the loan. No act of the borrower might deprive him of it. The plain-

tiff was to receive for the loan of his money a greater value' than six per centum. This was usury within the definition of the statute."

For the reasons stated the order should be reversed and judgment directed dismissing the complaint, with costs.

All concur.

Order reversed on the law, and complaint dismissed, with costs.