Thomas C. Chimera, J.
Defendant was in the business of repairing and selling musical instruments and other things usually associated with such business. Until October 27, 1950 there is no evidence that he ever speculated in old, rare and “ pedigreed ” items. On that day he succeeded in influencing plaintiff, his brother-in-law, into lending him $5,000 with which to purchase a “ Stradivarius ”, promising to repay plaintiff with interest at 6%.
In June of 1951, as a result of a conversation had between the parties and their wives, sisters, it was agreed that plaintiff would advance to defendant additional sums of money with the understanding that the money was to be used to purchase other rare instruments with a view to establishing a lucrative *252 traffic in such. It was further agreed that the “ Stradivarius ” originally purchased was to be added to the collection; that all moneys advanced by plaintiff, including the original $5,000, would be repaid by defendant with 6% interest, and in addition thereto, that the net profits of all ultimate sales would be divided between the parties. No distribution of profits was to be made until all advances with 6% interest were fully repaid. Net profits were to be computed after a credit to defendant for all expenses allocated to each acquisition and a credit also of $350 monthly to defendant for labor, “ know how” and ‘ ‘ overhead ’ ’, for each month during which any part of the collection or its substitute by barter or otherwise remained undisposed of by ultimate sale. As the testimony shows, the relationship was of an indefinite duration but could come to an end within a relatively short time. The ultimate disposition by sale of the last item of the collection would end the relationship.
Plaintiff claims that the underlying agreement between the parties contemplated a series of joint ventures while defendant strenuously contends that the transactions between the parties were in fact loans tainted with usury.
This is an action for an accounting in which findings of fact and conclusions of law were waived by operation of law (Civ. Prac. Act, §§ 439, 440; Wiencko v. O’Brien, 8 Misc 2d 267).
There is no question that the first transaction between the parties (check, plaintiff’s Ex. 3A) was an out-and-out loan repayable at 6% interest. The evidence clearly indicates this to be a fact. Whether that transaction, in the light of subsequent conversations and additional substantial money advances, can ripen into a partnership agreement is only one of the questions to be answered in this case.
The other question concerns the legal effect of a purported agreement whereby plaintiff advanced moneys to defendant with which defendant was to buy, sell or barter old musical instruments, personally guarantee the repaying of all principal with 6% interest, and, in addition, divide the net profits of all such transactions with plaintiff.
The first question is easily answered by the incisive language of the immortal Cardozo in Beatty v. Guggenheim Exploration Co. (225 N. Y. 380, 388): “Whenever two men contract, no limitation self-imposed can destroy their power to contract again ”.
This doctrine applies to any agreement be it oral or in writing — even a written agreement containing a clause that the same may not be altered or modified except in writing.
*253 The answer to the second question comes with more difficulty in view of the claim of joint venture and the feature of the alleged agreement requiring that defendant be personally bound to repay all advances with full legal interest before net profits, if any resulted, were to be divided between the parties.
Whether the transaction is called a loan, an advance, an investment, a partnership or by any other name is not determinative of the issue, although, of course, what you call it is one clue to be considered in order to identify its true nature. Here, the parties and their wives have called the transactions by each of these names so that the semantics employed only serve to confuse the issue.
The answer lies in the intent rather than the choice of language and the intent may be gleaned from the acts of the parties.
There is a wealth of case and commentary on this subject dating back even beyond the founding of the Republic due not so much to the complexity of the problem as it is to judicial abhorrence of penalties and forfeiture. And it is a concomitant of this historic fastidiousness that if upon the whole case a transaction can be construed alternately — good or bad, legal or illegal, usurious or nonusurious — the more worthy of the alternates has invariably found favor with the courts. This is such a case!
It is the law that, if the parties intended all advance of moneys to be a loan payable at 6% interest with a bonus of a share of profits to follow, such a transaction would be usurious and wholly unenforcible (General Business Law, § 370 et seq., Diehl v. Becker, 227 N. Y. 318; Browne v. Vredenburgh, 43 N .Y. 195; Moore v. Plaza Commercial Corp., 9 A D 2d 223; Heller v. Yaeger, 258 App. Div. 139; Webster v. Roe, 212 App. Div. 756).
And there is some authority for the conclusion that this doctrine applies also to loans made by one partner to a partnership. The suggestion is most strongly advanced in Corpus Juris Secundum (91 C. J. S., Usury, § 26, p. 601) wherein it is stated, among other things, that if a partner or joint adventurer binds himself absolutely to repay loans to a partnership thus exempting the lending partner from risk of loss, only legal rates may be charged. Defendant makes much of this note and I do not quarrel with it even though the authorities cited are those of foreign jurisdictions. Nevertheless, I do not see those authorities doing violence to the clear distinction pointed up in Orvis v. Curtiss (157 N. Y. 657) and cases therein cited — the authority in this jurisdiction most nearly applicable to the facts in the case at bar.
*254 There it was decided that if two parties contemplate a joint venture or partnership, whereby one’s advances are to be repaid with full legal interest regardless of the outcome of the venture and if the venture be successful, the net profits are to be divided between the parties, the defense of usury is not available to the other who promotes the advances for the purpose of employing the money in the business venture and who dictates the terms of repayment.
Laying aside the problem before us for the moment, let us consider two simple hypothetical cases:
Case No. 1. H. comes to S. and says to him: “ I am thinking of going into the business of trading in old, rare musical instruments but this requires a lot of capital which I do not have. You have the money. I would like you to lend it to me.” S. answers: “ I shall lend you the money on the condition that you will repay the loan with 6% interest and if you make a profit in your business, you will give me 50% of it after first deducting all legitimate expenses ”.
Case No. 2. H. comes to S. and says to him: “ The business of trading in old, rare musical instruments is a very lucrative one but it takes a lot of capital which I do not have. You have the money. I have the know-how, setup and contacts. I am asking you to come into this business with me. I guarantee that you won’t lose anything. You will first be repaid every cent you advance with 6% interest, and when the last item of our collection is sold, after first deducting the legitimate expenses, you will split the net profits.”
To the unpracticed ‘1 eye ’ ’ it would seem that there is little difference in these two hypothetical cases since the liabilities of the parties as between themselves, the risks agreed upon and the net money benefits to each are identical. Yet the courts have ruled the former a usurious loan and the latter a partnership not subject to the defense of usury (Orvis v. Curtiss, supra). Nor is this simply judicial caprice reaching out against forfeitures and penalties. There are differences of substance in these two hypothetical cases readily recognizable once the authorities of this jurisdiction are carefully digested.
I find as facts that ultimately there was neither a loan nor forbearance of money even though the original advance was an out-and-out loan; that there was no corrupt purpose or intent on the part of plaintiff to secure an illegal rate of interest for a loan, and on the part of defendant to borrow upon the usurious terms dictated by plaintiff; that in June, 1951, defendant applied to plaintiff for the purpose of entering into a series of joint ventures to speculate in old, rare musical instruments *255 and not to borrow money in the sense in which such transactions are commonly understood.
The worst that can be said is that the plaintiff’s purpose was to buy and sell these items at defendant’s risk securing to himself all advances made by him together with interest at 6%, taking care to make such an agreement with the defendant as would exempt him from all possible loss and not only that, but securing to himself a half share of net profits, if any resulted from the ventures.
On these findings, I must conclude that the defense of usury involving crime and forfeiture is not applicable.
An analysis of Orvis (supra) makes it unnecessary for this court to resort to more dialectics for there is enough in that case and in the authorities there relied upon, to pinpoint the individuating notes identifying the transactions here as a series of joint ventures rather than loans subject to the defense of usury.
It will be argued by defendant here that Orvis must be distinguished because that was a case involving two people engaged in similar businesses and the record there disclosed no proof or claim that defendant had ever applied to the plaintiff for a loan, while here one party was a professional, the other a businessman and the labels of loan are grafted on the body of the transactions like barnacles on the underside of a vessel.
The first point is without merit. The history of commerce is studied with partnerships in which one or more of the partners brought neither experience nor service to the venture — only money. As for the other point —it will be sufficient to say that, if the record here is laden with mention and suggestion of loan, it is also loaded with evidence of investment and partnership.
Consider these facts consistent with loans but more often identifiable with partnerships:
1. The money advanced was to be used for the purpose of purchasing old, rare musical instruments and nothing else.
2. Separate cards were made of each item purchased with the money furnished by plaintiff or exchanged by barter so as to keep those items separate from items belonging to the defendant exclusively.
3. Summary sheets on yellow unit rule paper were made of each and every item purchased with the money advanced or substituted for by barter bearing column captions: “ purchase, expense trip, duty & shipping, total cost, cost of repair, selling price, commissions paid, trade-in, net sales, gross profit ” and *256 in the final column a heading: “ 1/2 ”. Also capitulation sheets (plaintiff’s Exs. 14, 15, 16).
Consider these facts, inconsistent with loans, wholly identifiable with the theory of partnership.
1. In a post card sent to plaintiff by defendant after the money was advanced and while the latter was abroad (plaintiff’s Ex. 5) this significant language appears: “Am doing real fine! Our collection is growing to be a very nice one. Am sure that Rita keeps you informed. One day when business will develop, the Salters should take a trip to Italy too! ’ ’
2. In another communication from abroad:
‘ ‘ Dear Abu-Billy and partner,
“ I am sure that Rita kept you well informed. My stay in London was excellent and have made the best possible contact. Bought $5000 worth of instruments which will be shipped — one big box by boat.
‘1 From Tel-Aviv I will go to Florence, Italy as the fellow who runs the violin business in London is going to go there. I am doing much better with his help — as he knows the stuff and knows the Italian dealers and places where to find instruments.
“ All in all it looks very good — so, don’t worry, it will be ALRIGHT- * * *.
“ Well Andrew, this is just to let you know that I haven’t forgotten about my partner — So keep cool and well.”
3. There is documentary evidence of a pattern of consultation between the parties as to promotion and sales as witness the language of defendant’s letter to plaintiff:
“here is a thousand dollars — please wait until next week to deposit the check — the Detroit check has to be cleared—
“ The fellow is very happy with the Cello and the transaction will hold!
‘ ‘ What is your reaction to the letter I would like to send out to colleges and music schools ?
‘ ‘ The special sale post cards I intend enclosing in the letters and also send out to my own mailing list.” (Plaintiff’s Ex. 10.)
4. A brochure (plaintiff’s Ex. 11) was caused to be printed by the parties, the source material supplied by defendant while the format and language was contributed by plaintiff.
5. There is other clear written evidence of participation in a business venture by plaintiff (defendant’s letter to plaintiff, plaintiff’s Ex. 9).
‘ ‘ I have been thinking that you should make new arrangements with Kirchenbaum.
*257 ‘ ‘ Fifty Dollars a month, he is charging is much too much. At the time you made these arrangements business was different * * * Do give it a thought! ”
We come now to a puzzling phase of this case.
Two documents (plaintiff’s Exs. 1 and 2 for ident., now in evidence) were offered by plaintiff’s counsel and strenuously opposed by counsel for defendant. It is difficult to understand why they were offered by former, and more difficult — why they were opposed by the latter. Standing by themselves they would appear to bear out the defense of usurious loan and destroy the plaintiff’s claim of joint venture. They purport to be agreements setting up additional safeguards securing the repayment of plaintiff’s advances referring to them as loans in unmistakable language. One would say that, since the documents were drafted by a lawyer of plaintiff’s own choosing, the employment of the nomenclature may be regarded as a clear admission against interest.
If this language were imported into the case for the first time by plaintiff’s lawyer, the conclusion last expressed could be inescapable. But this was one of plaintiff’s characterizations carried over from time to time from the very first critical conversation and as has been said, although significant, is hardly determinative of the issue.
Moreover, assuming but not deciding that those two documents can be said to reflect contracts usurious on their face, they would not affect plaintiff’s right to an accounting if the original agreement was enforcible, since a contract not tainted with usuary in its inception will not be affected by subsequent usurious transactions in connection therewith (LaMont v. Handy, 250 App. Div. 657; Hinman v. Brundage, 13 N. Y. S. 2d 363; 91 C. J. S., Usury, § 61, p. 642).
Finally, there is this to be said: The agreement of June, 1951 was not a written contract usurious on its face nor do the facts raise a presumption to that effect so as to east upon plaintiff the burden of proving that the agreement was not usurious. Whether there was a loan at all is a nice question of fact and in such a situation, the burden of proving usury is upon defendant who asserts it.
Defendant produced no witnesses except one whose testimony was stricken as hearsay. Although defendant was present in the courtroom throughout the trial, he elected not to subject himself to examination as he undoubtedly had a right to do. If he was the master of his own strategy, he was also the victim of his own foolishness. In a situation so precariously balanced *258 as this was, his testimony could have shed some light on the true nature of the agreement. His failure to take the stand permits an unfavorable inference. The trier of the fact in such a situation may not be permitted to speculate as to what defendant would have testified to had he elected to testify but he may apply the general rule which is to the effect that “ Where one party to an action knowing the truth of a matter in controversy and having the evidence in his possession, omits to speak, every inference warranted by the evidence offered will be indulged in against him” (Dowling v. Hastings, 211 N. Y. 199, 202; Eraser Co. v. Kaufman, 138 N. Y. S. 2d 743, and cases therein cited).
Plaintiff is, therefore, entitled to a dissolution of the partnership and an accounting as prayed for and I direct that judgment be entered accordingly, with costs. Settle interlocutory judgment providing for referral to an Official Referee.