EL PASO BANK & TRUST CO. v. FIRST STATE BANK OF EUSTIS. (No. 817.)

(Court of Civil Appeals of Texas. El Paso. March 21, 1918. Rehearing Denied April 11, 1918.)

1. GUARANTY ⊕⇒27—CONSTRUCTION.

The language of a guaranteeing telegram and the circumstances surrounding the parties at the time it was sent will be looked to in determining the parties' intention.

2. GUARANTY ⊕⇒36(2)—"ABSOLUTE GUARANTY OF PAYMENT."

Where a bank telegraphed a bank at place of seller's residence that "we guarantee payment $300 by" a named "produce company for carload watermelons," neither bank being a party to the contract of sale of the carload between the seller and the produce company, the guaranty contract was one of absolute guaranty of payment, rather than a guaranty of its collection; a guaranty of payment of an 'obligation without words of limitation or condition being construed as an absolute guaranty.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Absolute Guaranty; Guaranty of Payment.]

3. GUARANTY ⊕⇒78(1)—ABSOLUTE GUARANTY —DEFENSES.

Where a bank absolutely guaranteed payment of $300 for a carload of watermelons by a produce company, the guaranty not referring to the contract of sale, it was no defense to suit on the guaranty that the car was not shipped within the time agreed upon between the seller and produce company, or that the melons were not up to the agreed standard in weight or quality.

4. BANKS AND BANKING ⊕⇒261(3) — ULTRA VIRES.

Where a bank, on faith of guaranty by another bank of payment by a produce company of a certain sum for a carload of melons, permitted the seller thereof to withdraw the guaranteed sum from the bank, the guaranteeing bank could not, in action on its guarantee, plead that the contract of guaranty was beyond its charter powers.

Appeal from El Paso County Court; E. B. McClintock, Judge.

Action by the First State Bank of Eustis against the El Paso Bank & Trust Company. From judgment for plaintiff, defendant appeals. Affirmed.

Goldstein & Miller, of El Paso, for appellant. Russell & Gillett, of El Paso, for appellee.

WALTHALL, J. This suit was brought by appellee against appellant to recover $300, based upon a code telegram, sent by appellant to appellee on June 7, 1915, which telegram, when translated, reads as follows:

"First State Bank, Eustis, Fla. We guarantee payment three hundred dollars by Texas Produce Company for carload watermelons. [Signed] El Paso Bank & Trust Co."

The message was duly received by appellee at Eustis, Fla., on the above date. Appellee alleged that appellant, by reason of the message, became bound to pay to appellee $300 for one carload of watermelons, whenever the same should be delivered to the Texas Produce Company, or be tendered to it, and that the said promise was an absolute and unconditioned agreement to pay said sum whenever said carload of watermelons had been delivered to the Texas Produce Company, or tendered to it, and that said melons were shipped and tendered to the Texas Produce Company, as follows:

On or about the 16th day of June, 1915, S. B. Sligh & Co., of Eustis, Fla., delivered to the railroad company at Eustis a carload of watermelons, consigned to the order of S. B.

Sligh & Co., "Notify Texas Produce Company, at El Paso, Texas," to be delivered to the Texas Produce Company upon the payment of the value thereof, in the sum of $300; that on the 16th day of June, 1915, the shipper drew a draft on appellant in favor of appellee for the sum of $300, and attached the draft to the bill of lading and sent same to appellant for collection, and that payment was refused; that appellee placed said amount to the credit of S. B. Sligh & Co., and, believing that appellant would pay same, permitted S. B. Sligh & Co. to withdraw said amount from its bank.

Appellant answered by general demurrer, denied that it ever authorized S. B. Sligh & Co. to draw the draft in question on it, or that S. B. Sligh & Co. had any authority so to do. Appellant further pleaded that said telegram was sent under the following conditions:

That on or about June 5, 1915, W. H. Constable Company were acting in El Paso as the brokers for S. B. Sligh & Co., and, on said date, acting as such brokers, sent to S. B. Sligh & Co. the following telegram:

"Texas Produce Company this city offers three hundred dollars, car thirty thousand pounds Tom Watson melons twenty-five pounds average for shipment Monday. Confirm if possible and we will have Bank wire guarantee. Rush answer."

That S. B. Sligh & Co. received said telegram, and on June 7th replied to W. H. Constable as follows:

"Accept Texas Produce Company offer. Bank guarantee First State Bank, Eustis, Florida."

That thereupon W. H. Constable Company wired S. B. Sligh & Co., at Leesburg. Fla., as follows:

"Ship Texas Produce Company today as per your telegram; their bank wiring your bank the necessary guaranty. Trace shipment."

That on the 7th day of June the W. H. Constable Company sent to S. B. Sligh & Co. the following telegram:

"Wire routing and car number of Texas Produce car."

That the telegram of guaranty was sent, purely as an accommodation to the Texas Produce Company, and without anything of value whatever moving to appellant. That under said contract, it was the duty of S. B. Sligh & Co. to ship said melons on June 7th, and to ship 30,000 pounds in said car, and that time was of the essence of the contract, but that S. B. Sligh & Co. did not ship the same until the 16th or 17th day of June, and that said car when shipped contained only 24,-000 pounds, and that by reason thereof the Texas Produce Company was not bound to take or pay for said melons—that under said telegram appellant became bound only in the event the car of melons was shipped within the time, and contained the weight provided for in the contract, and in the event the Texas Produce Company became liable under said contract to pay for same and failed to do so.

Appellant further alleged that prior to the time the said melons were shipped the Texas Produce Company and W. H. Constable Company had repudiated said contract on account of its breach by S. B. Sligh & Co., appellant alleging that said telegram in itself, and the bill of lading for said car of melons, put the appellee on notice and charged it with knowledge that appellant became bound on said telegram only in the event the Texas Produce Company became bound and failed to pay for the melons.

Appellee by supplemental petition excepted to the appellant's answer, in which it stated the circumstances and conditions under which the guaranty telegram was sent, as shown in the second telegram above set out. The grounds of the two exceptions are: First, the cause of action is based upon an absolute and unconditional guaranty in writing made by appellee to plaintiff for the sum of $300, that the terms of said guaranty are unambiguous, and the answer varied the terms of the guaranty telegram and ingrafted conditions not embraced therein, and not necessary to a complete understanding of it; and, second, the answer pertained exclusively to transactions had between the W. H. Constable Company and S. B. Sligh & Co., with which plaintiff is in no way connected, and which could in no way affect its guaranty. Appellee further answered, but we need not more fully state the answer at this time. The trial court sustained the two exceptions to the answer, heard the evidence on the remaining issues, and rendered judgment for appellee.

Appellant, in its first two assignments, insists that the court was in error in sustaining the two exceptions to its answer. The proposition, common to the two assignments, is that under the facts pleaded by appellant the Texas Produce Company, the buyer, never became liable to pay for the carload of watermelons, the contract for their purchase having been breached by the seller, and the purchaser not being liable, the appellant, guarantor, was not liable.

The opposing contentions of appellant and appellee might be summarized thus: Appellant contends that the telegram it sent to the appellee bank was but a collateral undertaking for the Texas Produce Company which stood first bound to pay for the melons; that until there was a liability on the part of the Texas Produce Company, its principal, and a default in the payment, there was no liability, and could be none on its part.

Appellee's contention is that the liability of appellant is not dependent upon the liability of the Texas Produce Company to pay for the melons; that the telegraphic guaranty which is the basis of the suit was the voluntary, independent, and personal act of appellant in which it absolutely and unconditionally and immediately guaranteed

to pay appellee the sum of money specified for one carload of watermelons.

Two propositions seem to be presented: First, is the telegram, "We guarantee payment three hundred dollars by Texas Produce Company for carload watermelons," an absolute, unconditional, and present promise by appellant to pay the sum of money specified, or a collection therefor? and, second, to what extent could appellant make inquiry into the facts and circumstances attending the making of the contract between the buyer and seller of the melons, and the performance or nonperformance of the contract of purchase of the melons, as a defense under his promise, conceding that the words constitute an original, absolute, unconditional, and present promise to pay?

[1] If the promise is an original undertaking, absolute and unconditional, it is outside of and not controlled by articles 1843 or 6336, Revised Statutes 1911. The language used in the guaranteeing telegram and the circumstances surrounding the parties at the time it was sent will be looked to in determining the intention of the parties to the writing. Friedman-Shelby Shoe Co. v. Davidson, 189 S. W. 1029.

[2] The telegram was sent from the appellee bank to appellant bank, neither being parties to the contract of buying or selling the car of melons. The language of the telegram indicates a present promise of payment of the amount stated by the Texas Produce Company for a stated article of merchandise, a carload of melons. There is no condition or contingency suggested upon which the payment is to be made. To read any condition or contingency into the wording of the message which the law does not put into it would, in our opinion, make for the parties a contract they did not make for themselves. If the appellant intended to absolutely guarantee the payment of the money by the Texas Produce Company, and to indicate or identify the transaction or the thing for which the payment was to be made, how else could it word the telegram and state it in more definite language? We conclude that the telegram is an absolute guaranty of the payment of the money, rather than a guaranty of its collection. Section 111, Brandt on Suretyship, and authorities there cited. A guaranty of the payment of an obligation without words of limitation or condition is construed as an absolute guaranty. Ruling Case Law, vol. 12, p. 1064.

[3] If we are not in error in so holding, it seems to us that if the appellant could defend against the appellee's suit by showing that the car of melons was not shipped within the time agreed upon between the buyer and seller, or that the melons did not come up to the agreed standard in weight or quality, would, in effect, indirectly, put into the guaranteeing telegram a condition which appellant did not write into it, and which the law does not imply. Such defense would make the promise to pay a conditional one.

The rule is stated to be general that in case of an absolute guaranty, no demand upon the principal debtor is necessary. 20 Cyc. 1459. It is not treated as a collateral liability, but is a primary and positive agreement, and the breach of the principal's contract to pay the sum promised ipso facto imposes upon the guarantor a complete liability. There was nothing in the telegram itself or in the bill of lading for the car of melons that tended to charge appellee with notice or knowledge of the contract between the seller and buyer, or of its breach by S. B. Sligh & Co., as alleged in the answer.

There was no error in the court's sustaining the two exceptions to the answer, and the two assignments are overruled. What we have said in passing upon the first two assignments necessarily disposes of the remaining assignments, except the ninth.

[4] By the ninth assignment it is claimed that the guaranty was without consideration to appellant—was purely an accommodation to the Texas Produce Company, and was beyond the power of appellant bank to make same, and was void. We think the case of Bond v. Terrell Manufacturing Co., 82 Tex. 309, 18 S. W. 691, and the authorities there used, is an answer to the contention. In this case the appellee bank on the faith of appellant's guaranty permitted the sum guaranteed to be withdrawn from its bank, and we think that, under the authorities cited, it will not now be permitted to plead that on entering into the contract it exceeded its charter powers.

Finding no reversible error, the case is affirmed.