Charles Hargett, J.
Plaintiff moves for summary judgment in an action to foreclose a second and third mortgage, to appoint a Referee to compute, and to amend the title of the action.
No issue is raised as to the defaults pleaded in the complaint. The brief opposing affidavit of the defendant Saul Landau is confined to the defense of usury pleaded' in the answer. The burden of that defense is that the defendants Saul and Mary Landau, the owners of the property being foreclosed, were primary obligors of the loan transactions involved for which bonds, mortgages and other documents were executed and delivered to plaintiff, bearing interest at the rate of 1ti% per month or 15% a year.
The affidavits submitted in support of the motion are fully buttressed by documentary proof. They establish that the loan of $15,000 made by plaintiff on May 1, 1959, and $2,500 made by him on April 11, 1960, were corporate loans to Apex Chair Mfg. Corp., a domestic corporation engaged in the manufacture of upholstered furniture. Organized in December, 1956 as Landau Bros., Inc., 25 of its 100 shares of capital stock were issued to the defendant Saul Landau, its president, 25 shares to the defendant Mary Landau, his wife and the secretary-treasurer of the corporation, and 50 shares to Herbert Landau, Saul’s brother and the vice-president of the corporation. Plaintiff’s checks for said loans were drawn to the order of Apex, which indorsed and deposited them in its own bank accounts. According to the certified public accountant retained by the assignee for the benefit of Apex’ creditors, its books and records characterized the indebtedness here involved as corporate loans from the plaintiff, the proceeds of which were deposited in the cor *271 porate bank account and disbursed in the ordinary course of business.
Each of said loans was evidenced by the bond or note of Apex, bearing interest at the rate of 1 y^fo per month, and the repayment of each loan was expressly guaranteed by the defendants in each of such instruments, which also contained the following-provision: “It is further understood that a mortgage covering-premises known as 186-04 G-rand Central Parkway, which property is owned by Saul Landau and Mary Landau, is given as further security for the repayment of this bond. The obligee, Moritz Simon shall not be limited to recovery solely against the obligor or guarantors but may, in addition to any of his other remedies, foreclose the said mortgage, and the terms of the said mortgage are hereby made a part of the bond, which mortgage is being executed simultaneously with this bond.”
Each of said loans was authorized by Apex’ board of directors and its stockholders and was reflected in the corporate minutes. All disbursements incurred in connection with these loans were billed to and paid by Apex and form 1099 filed with the Bureau of Internal Revenue for 1959 shows that Apex paid the interest to the plaintiff. The formal guarantee of payment agreements recited that they were executed by the stockholders of Apex, including the defendants herein, 1 ‘ In order to induce Moritz Simon * * * to enter into contract or contracts with, make loan to Apex Chair Mfg. Corp.”. The stockholders also agreed that without in any manner affecting their liability under their guarantee of payment, the plaintiff could ‘ ‘ extend in whole or in part (by renewal or otherwise), modify, premature, change or release any indebtedness, liability or obligation of debtor or of any other person * * * sell, release, surrender, modify, impair," exchange, substitute or * * * extend the duration or the time for the performance or payment of any and all property * * * [and] settle, adjust, or compromise any claim * * * against debtors or any other person.” They further agreed as follows: ‘ ‘ The undersigned, hereby ratify and confirm any such extension renewal release, surrender, exchange, modification, impairment, substitution, settlement, adjustment, compromise, and agree that the same shall be binding upon the undersigned, and hereby waive any and all defenses, counterclaims, or offsets which the undersigned might or could have by reason thereof, it being understood that the undersigned shall, at all times, be and remain liable to Moritz Simon as primary obligors hereunder. ’ ’
The defendants claim that the foregoing language conclusively establishes their contention that they individually were *272 primary obligors along with Apex and that, consequently, they are entitled to plead the defense of usury because interest at the rate of 15% per annum was exacted and paid. They rely upon Astra Pictures v. Schapiro (182 Misc. 19), a Per .Curiam decision rendered by the Appellate Term of the First Department on June 3, 1944. That case involved an appeal from an order denying leave to amend the answer by pleading the defenses of usury and ultra vires in an action on a promissory note against individual and corporate comakers. The court held that an individual comaker of the note may plead usury as a defense, notwithstanding that the corporate comaker could not. In that case, however, the promissory note sued upon was jointly executed by the corporate defendant and by the individual defendant’s intestate who thus was a principal in the transaction claimed to be usurious.
In the instant case Apex alone executed the corporate bonds or notes and made by its corporate checks 13 monthly interest payments and the first installment of principal in the sum of $2,500, which was paid on November 23, 1959. The only payment of interest by the defendants individually was on June 22, 1960, after Apex had assigned for the benefit of creditors. This they were obliged to do under the obligations they had assumed as guarantors of payment of the loans referred to above, and there are no facts in the conclusory affidavit submitted in opposition to this motion establishing even an arguable issue that such loans were made to the defendants individually, though in form to the corporation. (Shapiro v. Weissman, 7 A D 2d 752.)
The term ‘ ‘ primary obligors ’ ’ contained in the guarantee agreements must be read in light of those instruments and the other documents in this case. The provisions of which these two words are part were intended to continue defendants’ personal liability as guarantors of payment, notwithstanding the possible subsequent extension, modification, substitution or other adjustment of the. corporate debt without the consent of the guarantors. Recognition was thus given to the rule in this State that a guarantor’s obligation is strictissimi juris, and that “he is discharged by any alteration of the contract, to which his guaranty applied, whether material or not, and the courts will not inquire whether it is or is not to his injury.” (Page v. Krekey, 137 N. Y. 307, 314; Becker v. Faber, 280 N. Y. 146, 149; Katz v. Leblang, 243 App. Div. 421.) The use of the words ‘ ‘ primary obligors ’ ’ in the foregoing context did not render the defendants comakers or co-obligors liable jointly with Apex for its indebtedness under its bonds. They were and remain merely guarantors of the corporation’s debt to the plaintiff, and the *273 mortgages executed and delivered to him were intended as additional security for the repayment of the indebtedness which they thus guaranteed.
Under these circumstances, the defense of usury cannot stand. (Salvin v. Myles Realty Co., 227 N. Y. 51; Shapiro v. Weissman, supra [decided after trial 19 Misc 2d 407]; see, also, Pink v. Kaplan, 252 App. Div. 490.) Plaintiff’s .motion is in all respects granted.
Submit order in accordance and providing for the appointment of a Beferee to compute.