Ben Verson, Trustee Under Trust Deed Dated May 4, 1961, and Recorded as Document No. 948232, and Benson Investment Corporation, an Illinois Corporation, Plaintiffs-Appellees, v. Willam C. Hardt and Marian D. Hardt, His Wife, Commercial Construction Corporation, an Illinois Corporation, Chicago Title and Trust Company, Trustee Under Trust Deed Dated November 30, 1961, and Recorded as Document No. 965255, Chicago Title and Trust Company, as Trustee Under Trust No. 35971, All Beneficiaries Under Chicago Title and Trust Company, as Trustee Under Trust No. 35971 and Unknown Owners, Defendants-Appellants.

Gen. No. 68–132.

Second District.

March 28, 1969.

Charles G. Martin, of Chicago, for appellants.

Barry A. Pitler, of Chicago, for appellees.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

William C. Hardt and Marian D. Hardt, his wife, defendants, appeal from a decree of foreclosure of certain real estate held in the name of Commercial Construction Corporation, and pledged by Commercial as collateral on a note to the plaintiff, Benson Investment Corporation, dated May 4th, 1961, in the amount of $109,000. (Commercial has not appealed.)

Part of the proceeds of the collateral note was used to pay off previous loans made by Benson to the Hardts, individually, at admittedly usurious rates of interest. The issue is raised whether a defense of usury may be asserted by the Hardts, which would prevent the default in the mortgage.

While there was a maze of complicated transactions alluded to in the testimony, between parties and non-parties, we deem the following facts to be those relevant to the case before us.

Prior to May 4th, 1961, Safari Motor Lodge Corporation, a nonparty, applied for a loan from Benson in the amount of $75,000. Benson agreed to make the loan providing that Safari would execute a note in the principal amount of $109,000 which would include precomputed interest on the $75,000 to cover the 36-month term of the loan. Benson required additional collateral from Safari as the latter owned only a beneficial interest in a land trust holding title to the very heavily encumbered motel property.

Commercial was the contractor building the Safari motel, and Safari was indebted to Commercial on the building contract in excess of $200,000. Apparently to safeguard this investment, Commercial agreed to pledge the real estate in controversy, which was owned by Commercial, to further secure the loan from Benson to Safari. This was a precondition to Benson's loan to Safari, as was a further pledge of certain lots in Cook County owned by the Hardts, individually.

The Hardts were the sole stockholders and officers of Commercial Corporation. Prior to May 4th, 1961, the Hardts, individually, had borrowed various sums of money from Benson. It was not denied that these individual loans included interest at usurious rates. The balance on the individual loans was claimed by the Hardts to amount to $11,500, without interest, as of May 4th, 1961, but the court found from the evidence that the balance due on the prior loans, as of that date, was $26,000.

When the May 4th, 1961, loan was made, Benson furnished $37,500 in "fresh" money, satisfied the $26,000 obligation of the Hardts to Benson, and also satisfied an obligation of Commercial to Benson in the amount of $11,500. The total of these items made up the $75,000 principal of the loan, stated with the prepaid interest, to be in the amount of $109,000.

While the May 4th transaction was essentially one loan to Safari, Safari signed its note and trust deed in the

amount of $109,000, pledging its beneficial interest in the motel property trust; Commercial signed its collateral note for $109,000 secured by a trust deed pledging the real estate foreclosed in this action; and in addition the Hardts pledged a parcel of real estate owned by them individually in Cook County, which is not involved in this litigation.

William C. Hardt, as president, and Marian D. Hardt, as secretary, signed the collateral note and trust deed involved in this foreclosure on behalf of Commercial. In addition, the Hardts, in their individual capacity, signed a usual printed form of guaranty on the reverse side of the note, which recited among other statements,

> "We . . . jointly and severally guarantee payment of the within note, accepting all its provisions authorizing the maker, without notice to us or either of us, to obtain an extension or extensions in whole or in part and waiving presentment for payment, demand, protest and notice of protest and non-payment; . . . ."

Safari went into bankruptcy subsequently and the Bell Savings and Loan foreclosed against the motel property and eventually acquired ownership for lack of a purchaser at the foreclosure sale. This disposed of the motel security.

In this foreclosure the Hardts were made defendants individually, as persons interested in the real estate, but no relief was sought against them on the alleged guaranty.

In decreeing the foreclosure, the trial court found that the collateral note was in default, and that there was due, at the time of the default, the sum of $51,085.95 in principal and interest, and that the total due, as of the time of the decree, including interest, costs and attorneys' fees, amounted to $77,948.74.

In their Brief and Argument, defendants have failed to set forth the "issues presented for review." However, the thrust of their argument is that Equity has the power

to look at the parties' intention and that the form of the transaction is not controlling; that in that view they are co-makers or joint obligors and not guarantors; that as co-makers or joint obligors the corporate exception to the usury law does not apply; and further that the note is usurious because it included the balance due on prior usurious loans.

The same arguments were presented to the trial judge, and rejected by him in a carefully considered memorandum opinion. The trial court found that the Hardts were not co-makers or joint obligors, but guarantors; and pointed out that, in any event, the foreclosure was against property pledged by Commercial, a corporation, and not property of the Hardts as individuals, and that no relief was sought against the Hardts personally on their guaranty; that even if the Hardts were considered as co-makers or co-obligors they could not assert the defense on behalf of the corporation which was precluded from doing so.

We agree.

■ The guaranty agreement signed by the Hardts, individually, is clear and unambiguous. They signed individually as guarantors of the obligation of Commercial Corporation, a not unusual situation. The evidence fully justified the finding by the court that the Hardts were not, in fact, co-makers or joint obligors, but guarantors.

■ Commercial, as a corporation, could not plead usury as a defense. Ill Rev Stats 1961, c 32, § 157.5(h); Tennant v. Joerns, 329 Ill 34, 39, 160 NE 160 (1928); Winkle v. Scott, 99 F2d 299, 302 (1938).

■ The Hardts, as guarantors, could not plead as a defense that usurious interest was charged Commercial, as such defense is personal to the principal, and when it cannot be invoked by the corporate principal, it cannot be invoked by the individual surety. Tennant v. Joerns, (supra, page 41); Winkle v. Scott, (supra, page 302). See also 63 ALR2d 924, 950.

484

The reason for the rule is that if excessive interest does not render the principal obligation illegal, it should not affect the undertaking of the guarantor which is to assure performance of the principal obligation.

Nor, under the particular circumstances here, do we find persuasive defendant's argument directed to the equitable principal of looking at the substance rather than the form of the transaction.

There is no evidence that the loan before us was, in fact, made to the Hardts as individuals. Commercial (as well as Safari, the primary obligor) was an established corporation and not one constructed as a sham to avoid the usury laws applicable to loans to individuals. While $26,000 of the $75,000 loan was used to satisfy a prior individual obligation of the Hardts to Benson, $11,500 was used to pay off an obligation of the Hardts' solely owned corporation, Commercial Construction Corporation, and $37,500 in fresh money was paid to Safari, a sinking debtor of Commercial.

■ No duress or fraud has been charged. As is apparent from the record, the only basis presented on which Equity should relieve the defendants from an "unconscionable" result is the extremely high rate of interest. Without more, this does not make a case for equitable relief in view of the exemption of loans to corporations at any rate of interest from the usury statute.

The circumstances of this case and the applicable statutes clearly distinguish the case from cases cited by the defendants in this connection. (E. G. Dorothy v. Commonwealth Commercial Co., 278 Ill 629, 116 NE 143 (1917) ; Higgins v. Lansingh, 154 Ill 301, 40 NE 362 (1895) ; Greengard v. Katz, 270 Ill App 227 (1933)).

We have taken a motion by plaintiff to dismiss the appeal with the case. The motion alleges that since the decree of foreclosure does not provide for any affirmative relief against the Hardts and Commercial Construction Corporation has not appealed, that, therefore, the Hardts

cannot by the appeal secure any relief from the decree of foreclosure and that the appeal thereby became moot.

We hereby deny the motion and have decided the case on the merits because the trial court found that the Hardts were guarantors rather than co-makers as they claimed. Since this finding against them would have been res adjudicata in a subsequent suit against them, we believe they were entitled to appeal.

We do not, however, adjudicate any defense which the Hardts, as guarantors, might or could assert in proceedings brought against them individually.

We, therefore, affirm.

Affirmed.

MORAN, P. J. and ABRAHAMSON, J., concur.