Bentley Kassal, J.
Motions No. 155 and No. 156, cross motions for summary judgment, are consolidated and both decided herein.
The facts: On March 28, 1969, Carmona Construction Company, Incorporated, by its president, Marc Mendler, acknowledged receipt of a loan of $10,000 from plaintiffs and of another $10,000 from Daniel Ifshin, not a party here. In exchange, the corporation promised to pay the principal in two years with interest at the rate of 20% per annum. In addition, the corporation promised that if certain specified real estate were sold ‘‘ by the present contract vendees thereof ’ ’ during the two-year period, the loan was to become immediately due and the lenders were to receive an “ additional capital payment of $4,000.00 which will be a capital gain. ’ ’
In the same instrument Marc Mendler and Stephen N. Ifshin, agreed to “ personally guarantee the obligation ” of the corporation and “ jointly and severally, to be responsible for payment of the sums owed pursuant to such loan. ’ ’
Marc Mendler died on February 9, 1971 and Henry Mendler, his father, as administrator of his estate, is codefendant here with Stephen N. Ifshin, cosurety on the loan.
On July 30, 1971, Stephen N. Ifshin alone entered into an agreement with plaintiffs whereby his obligation, as guarantor, was extended from March 28, 1971 to October 31, 1971 in consideration of the payment by him by August 10, 1971 of $2,000 representing part of the interest due with the balance to be paid by September 10, 1971. The letter covering this understanding and addressed to Ifshin states that it is ‘ ‘ regarding your payment, as guarantor. ’ ’
A.
Plaintiffs move under CPLR 3213 for summary judgment against both sureties for $10,000, plus interest from March 28, 1971. There is no claim asserted for the bonus sum or “ additional capital payment ”, since it is alleged that the real estate was not sold during the stated period.
Between them, the two defendants raised the following objections: (1) that the individual defendants were guarantors of collection and not guarantors of payment, and thus a judgment must first be obtained against the corporation and returned unsatisfied; (2) that the loan was actually made to individuals *566 and not to a corporation and thus is in violation of the usury-laws; and (3) that even assuming the loan were made to a corporation, the alleged ‘ ‘ bonus ’ ’ would in effect be interest and the transaction thus ‘ ‘ criminally usurious, ’ ’ since the interest exceeded 25%.
(In addition, there is a defense personal to the administrator of the estate of Marc Mendler in which it is asserted that it is released as a matter of law since an extension of payment was granted to the cosurety without its consent. This and the claim of part payment will be discussed in Part B pertaining to this defendant’s cross motion.)
(1) The language of the guarantee is clear and unambiguous in that, by its terms and as a matter of law, the two individuals were guarantors of payment and not collection. (Uniform Commercial Code, § 3-416.) No factual issue has been raised as to the nature of the guarantee, only as to its legal interpretation. Accordingly, plaintiffs may sue the sureties ‘ ‘ without resort by the holder to any other party.” (Uniform Commercial Code, § 3-416, subd. [1]). Whether or not the corporation is still in existence (apparently it is) and whether or not it has any funds (apparently it does not) are not relevant to plaintiffs’ right to sue the guarantors directly.
(2) The manner in which the original $10,000 was paid to Carmona Construction, Inc. was indeed circuitous; however, despite defendant Mendler’s vigorous argument he has not successfully challenged the allegation that the loan was to a corporation: The two checks, of which plaintiffs were payees, were indorsed to an intermediary “ Harry Macklowe Special,” who has never been satisfactorily identified. He, in turn, indorsed the checks to Carmona, and the corporation’s stamped indorsement shows that the checks were actually deposited in the corporate account. Macklowe thus served merely as a conduit, and it is clear the loan was not to him. Moreover, there is no evidence that the loan was to the individual defendants. Where a loan is made to a bona fide corporation even a ‘ ‘ dummy ’ ’ corporation formed to receive a usurious loan, the defense of usury may not be interposed by the corporation and thus may not be raised by the sureties or guarantors. (Leader v. Dinkler Mgt. Corp., 20 N Y 2d 393; Hoffman v. Nashen Motors, 20 N Y 2d 513.)
(3) The defense of criminal usury is, however, available to a corporation. (General Obligations Law, § 5-521; Penal Law, § 190.40.) Criminal usury is committed when a lender knowingly charges interest in excess of 25% per annum. Defendants argue *567 that the loan is criminally usurious in that the effective annual rate of interest is 30%. This figure is obtained by adding the stated interest rate of 20 % per annum to the 1 ‘ additional capital payment ’ ’ of $4,000, payable to the lenders under specified circumstances, which amounts to 20% of the total loan or 10% per annum. They argue that this ‘ ‘ bonus ’ ’ arrangement is merely a ruse to avoid the usury laws. Concededly the sale on which this bonus depended never went through, although this fact is not dispositive of the issue.
It has been held that a loan is usurious where the lender is entitled to the return of the principal and the full legal rate -of interest plus a bonus to be paid upon a contingency over which the borrower has no control. This contingent right to a bonus is something of value and this value added to the maximum interest results in total interest in excess of the legal rate. (Browne v. Vredenburgh, 43 N. Y. 195; Clarke v. Sheehan, 47 N. Y. 188, 195; Diehl v. Becker, 227 N. Y. 318; Webster v. Roe, 212 App. Div. 756, affd. 241 N. Y. 570; Moore v. Plaza Commercial Corp., 9 A D 2d 223, affd. 8 N Y 2d 813; McGee v. Friedman, 138 Misc. 817.) “ Whenever the lender stipulates even for a chance of an advantage beyond the legal interest, the contract is usurious, if he is entitled by the contract to have the money lent with the interest thereon repaid to him at all events.” (Cleveland v. Loder, 7 Paige Ch. 557, 559).
On the other hand, a loan has been deemed not usurious where the money is in fact advanced for the purpose of a joint venture (Salter v. Havivi, 30 Misc 2d 251; Niebuhr v. Schreyer, 13 N. Y. S. 809), or where the lender is to receive a percentage of profits but no stipulated interest (Trask v. Hazazer, 4 N. Y. S. 635; Mueller v. Brennan, 68 N. Y. S. 2d 517; Leibovici v. Rawicki, 57 Misc 2d 141, 144-145, affd. 64 Misc 2d 858), or where there is no certainty that the bonus (e.g. potential profits) plus the stipulated interest will exceed or even equal the legally allowable rate of interest (Richardson v. Hughitt, 76 N. Y. 55, 59). (See, also, 32 N. Y. Jur., Interest and Usury, § 41; Ann., 16 ALB 3d 475.) “ An agreement to pay an amount which may be more or less than the legal interest, depending upon a reasonable contingency, is not ipso facto usurious, because of the possibility that more than legal interest will be paid.” (Hartley v. Eagle Ins. Co., 222 N. Y. 178, 184; Matter of Bechtoldt, 159 Misc. 725).
In the instant case, the property was not sold. There could hardly have been any 11 certainty ” that the interest plus bonus would exceed the legal rate of interest (25%). Although the *568 amount of the bonus if realized, was a sum certain, the realization of this amount was not a certainty. In all of the cases involving contingent bonuses, which are cited above as examples of usurious loans, the courts never ascribed or needed to ascribe a value to the contingency since any value added to a loan on which the full amount of interest was already payable would give the lender consideration above the legally allowable amount.
Although there is a strong presumption against finding usury or criminal usury, which is a class E felony, usurious intent is a question of fact which must be resolved by the trier of fact. Not one of the parties has offered any explanation As to why the sizable sum of $4,000, allegedly dependent on a real estate deal, was included in this loan agreement. Denominating it a “ capital payment ” does not make it one. It is substance rather than form which determines whether such a bonus provision is in the nature of a joint venture or other legitimate arrangement, or whether it is merely a cover for exacting a greater sum in interest than the law allows. The question of whether the agreement is fair and reasonable or a mere device to evade the usury statutes cannot be determined summarily on the affidavits of interested parties. This issue necessitates a trial. (Hartley v. Eagle Ins. Co., 222 N. Y. 178, 185, supra; Graham v. Weiss, 3 Misc 2d 28; Oleet v. Pennsylvania Exch. Bank, 285 App. Div. 411, 413; see Marcelli v. Romano, 32 Misc 2d 250.)
Some factual questions which are raised by the language of the instrument are who the contract vendees are, what their relationship to the parties was, whether there was a joint venture, whether the $20,000 loan was to be used to acquire this or other property or for construction.
B.
Defendant Mendler cross-moves for summary judgment dismissing the complaint of both plaintiffs against him or at least that of Charles Cusick. His first ground is usuriousness, which has been disposed of above. Two other grounds are raised in his motion papers: (1) that the loan was repaid by Marc Mendler to the extent of $5,000 by a check to the order of Charles Cusick; and (2) that assuming that the loan was made to the corporation, the granting of an extension of time to cosurety Stephen Ifshin released the administrator as a matter of law.
(1) The claim of part payment does not appear to be supported by the documentary evidence submitted by both parties: The check relied upon by the administrator was drawn on April 16, 1969, on the corporate account of Plus Realty Co., not on *569 Marc Mendler’s personal account. Moreover, the date of this check is less than one month from the date on which the two-year loan and surety agreements were entered into, and it is difficult to believe that Plus Realty would repay the debt of another almost two years before the debt became due. In addition, Charles Cusick asserts that this check represented repayment of a loan made to Plus Realty Co. by his son-in-law Frederick Cornell. As evidence he has submitted a photocopy of a check for $5,000 dated January 29, 1969, which was indorsed by the company’s stamp deposited in its corporate account. Nevertheless, I cannot, as a matter of law, rule that there was no repayment.
(2) The second point involves a matter of law on which there appears to be no reported decision in this State and varying views among courts in other jurisdictions.
It is well-settled law in New York that an extension of time granted to the principal debtor releases the surety, unless he consents thereto or unless the creditor expressly reserves his rights against the surety. (Yonkers Bldrs. Supply Co. v. Luciano & Son, 269 N. Y. 171, 176; Hall & Co. v. Continental Cas. Co., 34 A D 2d 1028, 1029.) It has also been held that where there are two sureties for the same debt, the consent of one surety to an extension of time to the principal does not waive the right of the other to be released, unless the consenting surety had authority to bind his cosurety. (Smith v. Townsend, 25 N. Y. 479; 57 N. Y. Jur., Suretyship and G-uaranty, § 179; see, also, 500 Fifth Ave. v. Nielsen, 56 Misc 2d 392; General Obligations Law, §§ 15-101, 15-104.)
Although the courts have said that no rationale need be given the reason for the general rule discharging one or more sureties when an extension is given the debtor is generally acknowledged to be that extending the time for payment alters the original contract which the surety has guaranteed and that this change may increase the surety’s risk and adversely affect his rights. (Clark v. Sickler, 64 N. Y. 231.) The essential element for this release is that the extension precludes the creditor from enforcing the debt against the principal debtor when the debt is originally due. (See Polaris Bldg. Corp. v. Bimberg, 137 Misc. 289.)
A different situation is presented, however, where the two sureties are joint and several obligors and an extension of time is granted to one surety but not to the principal debtor. Under these circumstances, the better rule is that such extension is a personal contract between the parties and does not have the *570 effect of discharging the other surety. Here, the underlying contract remains unchanged. Since the guarantee of payment is several, as well as joint, in the absence of any extension, the lender could sue either surety at his option or the principal debtor. Now, when the debt falls due, the immediate liability of the debtor and of one surety is unchanged, and the latter may then sue the debtor and the cosurety for reimbursement or contribution without having had his rights or position prejudiced.
In Allen v. Oakes (288 S. W. 479 [Texas Civ. App.]) the Texas court held that the extension given to one of two joint and several sureties was not binding on the other so as to release him, because the principal debtor still had the obligation to pay on the due date and the cosurety was a guarantor for the debtor, not for the other surety. The court stated (p. 480): “ The extension of a note by one surety acting for himself alone does not extend said note as to the principal, and, if not extended as to the principal maker, it necessarily follows that a cosurety is not thereby released.” Accord, Sherman County v. Nichols (65 Neb. 250, 256), in which it was stated: “ This rule is based upon the principle that [the sureties’] liability is equal, and that extension of time given to one does not change the liability, or in any way prejudice the rights of the other, and that therefore he is not released or discharged from liability. Pingrey Surety and Guaranty, sec. 120; Draper v. Weld, 13 Gray [79 Mass] 580.”
But see Hallock v. Yankey (102 Wis. 41), involving joint sureties, and Bristol Bank & Trust Co. v. Broderick (122 Conn. 310). In the latter case, the court found that an extension to one would prejudice the other cosurety by depriving him of his right to proceed immediately for contribution. However, I do not find that this right would be affected under New York law, absent a total release. (See 500 Fifth Ave. v. Nielsen, 56 Misc 2d 392, supra.) In Hard v. Mingle (206 N. Y. 179) the lender’s claim against one surety’s estate was barred by the Statute of Limitations. The cosurety paid the debt, despite a disclaimer from the executrix, and brought suit against the estate for contribution (the principal debtor being insolvent). The court allowed the claim, holding (p. 184) that the creditor has “ nothing to do with the right of sureties for contribution among themselves ”, although he must not affirmatively impair those rights. I read this case as further support for the proposition that the right to contribution is a separate right, derived from the contract between the sureties, and not affected by a personal extension given to one of them. Moreover, this right does not arise *571 until one has paid more than his prorata share. Thus, no showing of prejudice can be made to warrant the release of the other surety. (See, also, Merchants Bank of N. Y. v. Pearl, 194 Misc. 919.)
Accordingly, defendant Mendler’s cross motion for summary judgment is denied. Plaintiffs’ motion for summary judgment is denied in that there are two issues of fact to be resolved, namely, whether the loan was usurious and whether any payment thereon had been made by Marc Mendler.