UNIVERSAL METALS AND MACHINERY, INC., Petitioner,

v.

James T. BOHART, et ux., Respondents.

No. B–5351.

Supreme Court of Texas.

June 23, 1976.

Turner, Rodgers, Sailers, Jordan & Calloway, John H. McElhaney, Dallas, for petitioner.

Tom James, Dallas, for respondents.

## ON MOTION FOR REHEARING

POPE, Justice.

Universal Metals and a number of amicus curiae briefs forcefully urge that this court did not give Article 1302–2.09 its intended meaning by our original opinion. We are convinced that we were wrong in holding that the Boharts were not guarantors within the meaning of that statute and that they could assert their claim for usury. We grant the motion for rehearing, withdraw our former opinion, set aside our former judgment, and substitute this opinion for our former one.

Universal Metals & Machinery, Inc., hereafter called Universal, instituted this suit against James T. Bohart and his wife Jean Bohart, to recover $219,000 which was the unpaid principal on a promissory note. Universal sought judgment against the Boharts on the legal theory that they were primary obligors under their guaranty agreement. A jury found that the purported maker's signature on the promissory note which the Boharts guaranteed was a forgery. The trial court rendered judgment for Universal as the holder-payee against the Boharts and that court also denied the Boharts' counterclaim that Universal charged them usurious interest. The court of civil appeals, with a divided court, reversed the judgment of the trial court and rendered judgment that Universal take nothing. 523 S.W.2d 279. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

Universal sold and delivered some machinery to Beneficiadora de Minerales de Tlaxcala, S.A., a Mexican corporation hereafter called BMT. The Boharts owned a large proportion of the stock in the corporation and also owned all of the stock in a corporation which held the exclusive sales rights to BMT's production. The machinery had already been shipped to BMT in

Mexico when on November 1, 1971, the Boharts signed the instrument which is the basis of this suit. In relevant parts the instrument was:

### "PROMISSORY NOTE

"U.S. $<u>225,000.00</u> November 1 , 1971

"FOR VALUE RECEIVED, <u>Beneficiadora de Minerales de Tlaxcala, S.A., Santa Cruz # 1, Braccionamiento Industrial, Santa Cruz, Tlaxcala, Mexico</u> (Name and Address of Maker) by this promissory note hereby unconditionally promises to pay to the order of <u>Universal Metals & Machinery, Inc.</u> (Name of Insured), at <u>Houston National Bank— Houston, Texas</u> (Name and Address of U.S. Commercial Bank) the principal sum of <u>Two Hundred Twenty-five Thousand Dollars</u> Dollars (<u>$225,000.00</u>) in installments as hereinafter provided and to pay interest concurrently with each payment of principal at the rate of <u>twelve</u> per cent (<u>12</u>%) per annum on the unpaid principal balance hereof from time to time outstanding."

[Then follow other provisions for installment payments, prepayment, acceleration, and waiver.]

"<u>BENEFICIADORA DE MINERALES</u> By <u>/s/ Manuel Cortes</u>
 <u>DE TLAXCALA, SA</u>
 Title: <u>PRESIDENTE OF THE CORPORATION</u>

"FOR VALUE RECEIVED, the undersigned _____ as primary obligor(s), hereby (jointly and severally unconditionally guarantee(s) the prompt payment of principal and interest on the foregoing promissory note when and as due in accordance with its terms, and hereby waive(s) diligence, presentment, demand, protest, or notice of any kind whatsoever, as well as any requirement that the holder exhaust any right or take any action against the maker of the foregoing promissory note and hereby consent(s) to any extension of time or renewal thereof.

 <u>/s/ James T. Bohart</u> <u>/s/ Jean Bohart (Mrs. James T. Bohart)</u>
 (Name of Guarantor) (Name of Guarantor)"

---

Plaintiff did not name BMT as a defendant in its suit. The jury made findings that the signature of Manuel Cortes, President of BMT, was not genuine; but that plaintiff, Universal, accepted the instrument without knowledge of that fact. The basis for the judgment of the court of civil appeals was that the Boharts signed the instrument as primary obligors and also as guarantors. The court was of the opinion that the two terms are mutually exclusive, an ambiguity existed and in that situation the instrument should be construed in favor of its being a guaranty which imposed only secondary liability. The court then reasoned that the Boharts, being only secondarily liable, are not liable at all because BMT is not liable on its forged signature.

The instrument clearly shows that: (1) the Boharts signed "as primary obligor(s)," and (2) they "jointly and severally unconditionally guarantee the prompt payment of the principal and the interest . . . when and as due." They called themselves guarantors. In our opinion, the Boharts agreed to be the kind of "guarantors" which the instrument details; that is, guarantors who are primarily liable, who are jointly, severally and unconditionally liable for the prompt payment of principal and interest, when due and whether any action is taken against the maker or not. 38 C.J.S. *Guaranty* § 43 (1943).

Section 3.416(a) of the Texas Business & Commerce Code codified what was already the law of Texas. Clark, *Suretyship in the Uniform Commercial Code*, 46 Tex.L.Rev. 453, 454 (1968). It was enacted on September 1, 1967, when the Code became effective. The section reads:

(a) "Payment guaranteed" or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor without resort by the holder to any other party.

The Comment to the section which was prepared by the American Law Institute and the National Conference of Commissioners on Uniform State Laws is helpful. It says:

Purposes: The section is new. It states the commercial understanding as to the meaning and effect of words of guaranty added to a signature.

An indorser who guarantees *payment* waives not only presentment, notice of dishonor and protest, but also all demand upon the maker or drawee. Words of guaranty do not affect the character of the indorsement as an indorsement (Section 3—202(4)); but the liability of the indorser becomes indistinguishable from that of a co-maker. A guaranty of *collection* likewise waives formal presentment, notice of dishonor and protest, but requires that the holder first proceed against the maker or acceptor by suit and execution, or show that such proceeding would be useless. [Emphasis added.]

■ The Boharts guaranteed the prompt payment of the note, and they unconditionally guaranteed the payment when and as due. In 1 HAWKLAND, A TRANSACTIONAL GUIDE TO THE UNIFORM COMMERCIAL CODE at 492 (1964) the guaranty of payment and the waiver of conditions are discussed:

The most important situation in which primary liability is asserted against one who at first impression appears to be an indorser occurs when an apparent indorser guarantees payment or waives presentment and notice of dishonor. Since the difference in liability between an indorser and a maker is that the former has conditions precedent to liability, it follows that this difference disappears if these conditions are waived. Under section 3–416, one guaranteeing payment is treated as a primary party.

■ The Boharts waived any requirement that the holder of the note must exhaust its rights or take action against the maker, as a condition precedent to their liability. After the parties by their contract excluded certain conditions, the court should not again write those conditions into the note. We should interpret the instrument by the standard of performance upon which the parties agreed. Tex.Bus. & Comm.Code Ann. § 1.102 (1968).

■ A number of judicial precedents have held that guaranties, like the one in this case, are absolute rather than conditional, primary rather than secondary, and guarantees of payment rather than guarantees of collection. A discussion of many of those cases may be found in the dissenting opinion of the court of civil appeals and need not here be repeated. 523 S.W.2d 279, at 288–291. The guarantor, who contracted as a primary, absolute, unconditional obligor, is not freed from liability because of the forged signature of the maker. *Ganado Land Co. v. Smith*, 290 S.W. 920 (Tex.Civ. App.1927, writ ref'd); *El Paso Bank & Trust Co. v. First State Bank*, 202 S.W. 522 (Tex.Civ.App.1918, no writ); *Reynolds v.*

*Service Loan & Finance Co.*, 116 Ga.App. 740, 158 S.E.2d 309 (1967); *Holm v. Jamieson*, 173 Ill. 295, 50 N.E. 702 (1898); *Helms v. Wayne Agricultural Co.*, 73 Ind. 325 (1881); *Etelson v. Suburban Trust Co.*, 263 Md. 376, 283 A.2d 408 (1971); *Newark Finance Corp. v. Acocella*, 115 N.J.L. 388, 180 A. 862 (S.Ct.N.J.1935); *Cusick v. Ifshin*, 70 Misc.2d 564, 334 N.Y.S.2d 106 (Civ.Ct.N.Y. 1972); *Warner-Lambert Pharmaceutical Co. v. Sylk*, 471 F.2d 1137, 1145 (3d Cir. 1972).

In *El Paso Bank & Trust Co. v. First State Bank*, 202 S.W. 522 (Tex.Civ.App. 1918, no writ), the court held:

> The rule is stated to be general that in case of an absolute guaranty, no demand upon the principal debtor is necessary. . . . It is not treated as a collateral liability, but is a *primary* and positive agreement, and the *breach* of the principal's contract to pay the sum promised ipso facto imposes upon the guarantor a complete liability. (202 S.W. at 524.) [Emphasis added.]

Similar holdings are found in *Estes v. Continental Bank & Trust Co.*, 421 S.W.2d 158 (Tex.Civ.App.1967, no writ); *Dahmes v. Industrial Credit Co.*, 261 Minn. 26, 110 N.W.2d 484 (1961); *Simon v. Landau*, 27 Misc.2d 269, 208 N.Y.S.2d 120 (N.Y.Sp.Term 1960); *Swift & Co. v. Geraghty*, 199 Wis. 329, 226 N.W. 381 (1929). In *Dahmes, supra*, the court observed that the proceeds did not go to the one named guarantor and commented, "They are primarily liable in the sense that their guaranty was absolute rather than conditional." In *Simon, supra*, the court wrote:

> The term "primary obligors" contained in the guaranty agreements must be read in light of those instruments and the other documents in this case. The provisions of which these two words are part were intended to continue defendants' personal liability as guarantors of payment, notwithstanding the possible subsequent extension, modification, substitution or other adjustment of the corporate debt without the consent of the guarantors. . . . The use of the words "primary obligors" in the foregoing context did not render

the defendants co-makers or co-obligors liable jointly with Apex for its indebtedness under its bonds. They were and remain merely guarantors of the corporation's debt to the plaintiff, and the mortgages executed and delivered to him were intended as additional security for the repayment of the indebtedness which they thus guaranteed. (208 N.Y.S.2d at 123–124.)

█ The Boharts assert as an additional defense to the suit against them that there was no consideration for their agreement. We do not agree. The agreement recites "value received." About three months prior to the time that the Boharts signed the instrument, Mr. Bohart met with Universal's sales representative and the president of BMT to discuss the equipment which Universal could supply the Mexican corporation. They discussed the financing arrangement and Universal's representative at that time told Mr. Bohart that the company would require a guaranty. The machinery was then delivered to Mexico. When the guaranty agreement was later mailed to Mr. Bohart, he and his wife signed and returned it. The Boharts owned a large part of the stock in BMT and, as stated above, they owned all of the stock in another corporation which held exclusive sales rights to BMT's production. The Boharts had a real interest in the acquisition of the machinery which was necessary to BMT's continued and increased production. Mr. Bohart testified that the transaction would benefit his company. Under these facts there was consideration which supports the guaranty agreement between the Boharts as primary obligors and Universal. *Motor & Industrial Finance Corp. v. Hughes*, 157 Tex. 276, 302 S.W.2d 386 (1957); *Robertson v. City National Bank*, 120 Tex. 226, 36 S.W.2d 481 (1931); *Waller v. Missouri City State Bank*, 482 S.W.2d 40 (Tex.Civ.App.1972, writ ref'd n. r. e.); *Wortham v. Lake Jackson State Bank*, 435 S.W.2d 612 (Tex.Civ.App.1968, writ ref'd n. r. e.); *Otto v. Republic National Co.*, 173 S.W.2d 235 (Tex.Civ.App.1943, writ ref'd); *Commercial Inv. Co. of Uvalde v. Graves*, 132 S.W.2d 439 (Tex.Civ.App.1939, writ

ref'd). 38 Am.Jur.2d, *Guaranty* § 43 at 1046 (1968).

 The Boharts asserted a counterclaim against Universal Metals & Machinery, Inc. for recovery of usurious interest on the note. The trial court held that the Boharts were not in the position of co-makers who could assert a usury claim. The court of civil appeals also denied the claim for usury. We agree with the proposition that the Boharts were not entitled to claim usury even though the forged promissory note for the corporation, which they absolutely guaranteed, charged more than ten percent interest. Article 1302–2.09, Vernon's Annotated Texas Statutes, prohibits the claim or defense of usury by a guarantor of a corporate loan that is made in accordance with that section. We hold that the term "guarantor" includes those who are guarantors of payment. The article provides:

Notwithstanding any other provision of law, corporations, domestic or foreign, may agree to and stipulate for any rate of interest as such corporation may determine, not to exceed one and one-half percent (1½%) per month, on any bond, note, debt, contract or other obligation of such corporation under which the original principal amount is Five Thousand Dollars ($5,000) or more, or on any series of advances of money pursuant thereto if the aggregate of sums advanced or originally proposed to be advanced shall exceed Five Thousand Dollars ($5,000), or on any extension or renewal thereof, and in such instances, the claim or defense of usury by such corporation, its successors, *guarantors*, assigns or anyone on its behalf is prohibited; however, nothing contained herein shall prevent any charitable or religious corporation from asserting the claim or interposing the defense of usury in any action or proceeding. [Emphasis added.]

We have already held that the Boharts were guarantors and the prohibition of the claim or defense of usury expressed in the quoted article extends to guarantors of all kinds, *Wood v. Canfield Paper Co.*, 117 Tex. 399, 5 S.W.2d 748 (1928). This was explained in *E"Town Shopping Center, Inc. v. Lexington Finance Co.*, 436 S.W.2d 267, 269 (Ky.Ct.App.1969):

Conceding, as an explanatory note following this subsection [§ 3.416] of the UCC says, that the *liability* of a guarantor is made the same as that of a co-maker, it does not follow that he is in fact a co-maker, and certainly he is not the borrower for whose protection the usury laws were designed. It appears to us that the basic purpose of UCC § 3–416(1) is to put one who is technically a "guarantor" in the same position as a surety with respect to enforceability of the obligation without first proceeding against the principal. The liability of a surety is of course commensurate with that of its principal, and if the defense of usury is not available to the principal, it is not available to the surety. . . .

These other precedents also support that view: *Alling Paper Co. v. Massinin*, 31 Conn.Sup. 154, 325 A.2d 533 (Ct. of Common Pleas 1974); *Mercantile Nat'l Bank v. Berger*, 129 Ga.App. 707, 200 S.E.2d 921 (1973); *Reynolds v. Service Loan & Finance Co.*, 116 Ga.App. 740, 158 S.E.2d 309 (1967); *Verson v. Hardt*, 107 Ill.App.2d 480, 246 N.E.2d 461 (1969); *Carozza v. Federal Finance & Credit Co.*, 149 Md. 223, 131 A. 332 (Md.Ct.App.1925); *Pardee v. Fetter*, 345 Mich. 548, 77 N.W.2d 124 (1956); *Snyder v. Woxo, Inc.*, 185 Neb. 545, 177 N.W.2d 281 (1970); *A. J. Armstrong Co. v. Janburt Embroidery Corp.*, 97 N.J.Super. 246, 234 A.2d 737 (1967); *Ferdon v. Zarriello Bros., Inc.*, 87 N.J.Super. 124, 208 A.2d 186 (1965); *Leader v. Dinkler Management Corp.*, 20 N.Y.2d 393, 283 N.Y.S.2d 281, 230 N.E.2d 120 (1967); *All Purpose Finance Corp. v. D'Andrea*, 427 Pa. 341, 235 A.2d 808 (1967); *Robert L. Huffines, Jr., Foundation, Inc. v. Rockie Realty, Inc.*, 347 F.Supp. 1256 (D.S. C.1972).

We accordingly reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

STEAKLEY, Justice (dissenting).

I am not content to join the majority for several reasons.

In the first place, the rationale of the majority is a retreat from the strictness with which we have viewed an obligation where one person assumes to answer for the debt of another. We have heretofore acted consistently "with the favoritism of the law for guarantors and indemnitors," and this should be the road to decision here. *Hernandez v. Great American Ins. Co. of N. Y.,* 464 S.W.2d 91 (Tex.1971); *McKnight v. Virginia Mirror Co., Inc.,* 463 S.W.2d 428 (Tex. 1971). In *McKnight,* we quoted the statement of the rule by the late Chief Justice Hickman in his writing in *Jarecki Mfg. Co. v. Hinds,* 295 S.W. 274 (Tex.Civ.App.1927, writ dism'd, 6 S.W.2d 343):

"It has been often said that he [one assuming to answer for the debt of another] is a favorite of the law. His obligation does not extend one jot or tittle beyond what is 'nominated in the bond'. *Smith v. Montgomery,* 3 Tex. 199."

A guaranty agreement is a species of indemnity contract, i. e., the promissor agrees to be responsible for the performance of another over whom he does not have direct control. The agreement is strictly construed. See *Sira & Payne, Inc. v. Wallace & Riddle,* 484 S.W.2d 559 (Tex. 1972), where we restated the rule that an indemnity agreement will not be held to protect an indemnitee against the consequences of his own negligence unless the obligation is expressed in clear and unequivocal language. We should be no less strict in determining the obligation of the Boharts.

The circumstances of the execution of the note in question were these. Universal Metals, a Texas corporation, sold machine tools to BMT, a Mexican corporation. A promissory note in payment therefor was forwarded to the Mexican corporation and signed by it with no guarantors. The Foreign Credit Insurance Association, a group of domestic insurers who write insurance in conjunction with the Export-Import Bank, an agency of the United States, refused to accept the note without guarantors. FCIA wrote Export Credit Insurance upon the transaction and its form of promissory note obligation and guaranty was then utilized. A substitute note in this form was submitted and purportedly signed by BMT, and admittedly signed by the Boharts, and is the note upon which Universal Metals brought this suit against the Boharts.

It can hardly be gainsaid that, at the least, there is some doubt as to the nature of the obligation of the Boharts under the contract here. Witness the sharp divisions in the courts below; witness the terms of the contract and the circumstances of its execution. It is unmistakable on the face of the instrument that the Boharts signed in the stated capacity of guarantors, and not as co-makers. Cf. *Reed v. Buck,* 370 S.W.2d 867 (Tex.1963), where we recognized that, "Parties to a negotiable instrument are generally held to be liable in the capacity in which they sign the instrument and suable accordingly." It is also reasonably evident from the words used that the obligation the Boharts assumed was that of guarantors of payment of the note, to which obligation they became unconditionally bound. An "unconditional guaranty" is "one whereby the guarantor agrees to pay or perform a contract upon default of the principal without limitation. It is an absolute undertaking to pay a debt at maturity or perform an agreement if the principal does not pay or perform." See *Joe Heaston Tractor & Implement Co. v. Securities Acceptance Corp.,* 243 F.2d 196 (10 Cir. 1957), where the contract under review unconditionally guaranteed payment of notes in accordance with their terms.

It is equally unmistakable that the agreement presupposed an obligated maker; otherwise, there was no reason for inclusion of the provision for waiver of "any requirement that the holder exhaust any right or take any action against *the maker* of the foregoing promissory note."

I further disagree with the reliance of the majority on Sec. 3.416(a) of the Tex.Bus. & Comm.Code as a buttress to its holding that

the Boharts signed the note as co-makers. Section 3.416(a) reads:

"(a) 'Payment guaranteed' or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor without resort by the holder to any other party."

It is evident on its face that Sec. 3.416 has no application to a contract of guaranty with stated terms and conditions, and that its provisions do not purport to define rights in this circumstance. As indicated in the Comment, quoted by the majority, the writing concerns an indorsement and speaks of words added to a signature: words like "payment guaranteed" or "collection guaranteed." This is not the problem at hand.

It is not mentioned by the majority that the instrument in question was a form of promissory note obligation written by someone in the Foreign Credit Insurance Association. The inclusion by the unknown scrivener of the phrase "as primary obligor(s)" is really the only basis of any substance for the conversion by the majority of the obligation of the Boharts into that of co-makers. Of course, this phrase is the source of the problem of the case—really the whole problem—and must be considered. Admittedly, there is a surface plausibility to the overriding effect the majority has given the phrase; but in my view the phrase has been exaggerated out of proportion to the context in which it was included by the FCIA scrivener. The question is simply whether the effect of these words is to convert what is otherwise an obvious guarantee obligation into an obligation of the character that was itself guaranteed, i. e., a maker obligation. The contract provides that the guarantee obligation of payment of the note arises only "when and as due in accordance with its terms." These are explicitly stated conditions to liability of the Boharts. The note did not and could not become due in accordance with its terms if its maker, BMT, is not bound to pay, and payment was guaranteed by the Boharts only in such event; and only in such event would the Boharts become primary obligors for payment of the note. So it is my view that the majority has reached conclusions inconsistent with the terms of the contract and the circumstances of its execution, as well as contrary to the strictness we have heretofore followed in favoring one who is sought to be held for the debt of another.

Finally, it is quite certain that a contract of guaranty cannot be such without an obligation to be guaranteed, and presupposes that the obligation guaranteed is the primary obligation of another. From this it necessarily follows that the obligation of a guarantor is co-extensive with the obligation guaranteed and cannot be more or less; and, further, that an obligation of guaranty cannot exist in the absence of an obligation to be guaranteed. It is undisputed that BMT is not bound here.

As stated in 3 J. Kent, *Commentaries on American Law* 162 (8th ed. 1854), "A guaranty . . . is a promise to answer for the payment of some debt or the performance of some duty, in the case of the failure of another person, who, in the first instance is liable." A. Stearns, *The Law of Suretyship* § 4.1 (5th ed. 1951) states, "Since the contract of guaranty is collateral, a primary or principal obligation must exist to which it is secondary, as without a principal debt there can be no guaranty." The guaranty contract is secondary or collateral to some principal contract between the creditor and his principal debtor. The guaranty promise is a promise to answer for the debt or the default of the principal debtor under his contract with the creditor. Therefore, unless the debtor is bound under the principal contract, there is no obligation which is guaranteed and the guarantor is not liable to the creditor if the debtor fails to perform. 38 Am.Jur.2d *Guaranty* § 51 (1968).

I would affirm the judgment of the Court of Civil Appeals.