R. J. CARTER ENTERPRISES, INC.,
and R. J. Carter, Individually,
Appellants,

v.

GREENWAY BANK & TRUST OF
HOUSTON, Appellee.

No. 17690.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Jan. 29, 1981.

Rehearing Denied Feb. 26, 1981.

Brian E. Bro & Associates, Brian E. Bro, Houston, for appellants.

Dow, Cogburn & Friedman, Ronald E. Tigner, Houston, for appellee.

Before COLEMAN, C. J., and PEDEN and WARREN, JJ.

COLEMAN, Chief Justice.

This is an appeal by R.J. Carter Enterprises, Inc., (R.J.C.E.) and R.J. Carter, Individually, (Carter), from a take nothing judgment in favor of the appellee Greenway Bank & Trust of Houston (Greenway). R.J.C.E. and Carter brought this suit to recover the penalties provided in the usury statute. The trial was to a jury, but the trial court entered a judgment non obstante veredicto.

Carter was the president and sole stock holder of R.J.C.E., a corporation engaged in the building business. Carter approached Greenway in May of 1974 for the purpose of obtaining interim construction financing. Greenway had previously afforded R.J.C.E. construction financing and an agreement was quickly reached to make the second loan on substantially the same terms as the first. The transaction was evidenced by four written instruments prepared by Greenway: (1) the loan agreement executed by both R.J.C.E. and Carter; (2) the promissory note executed only by R.J.C.E; (3) the deed of trust and security agreement executed only by R.J.C.E.; (4) and the specific guaranty executed only by Carter.

The interest rate on the note was 3 points over the prime rate as set by First City National Bank of Houston. During the life of the loan the "prime" ranged from 8¾% to 12%, which gave the note an effective rate ranging between 11¾% and 15%. There was a $2,000.00 loan commitment fee paid by R.J.C.E. in addition to the $19,-470.14 paid in interest. The building project was completed and the loan paid in full.

Carter had established a bank account in the name "R.J. Mini Storage Account" with Greenway in connection with his previous loan. There was testimony that Carter and Mr. Sparks, who negotiated the loan for Greenway, agreed that the proceeds of the loan would be deposited to the "R.J. Mini Storage Account." This was not a corporate account, but the proceeds of the loan were deposited to the credit of this account and later the funds were used for corporate purposes. Some of the interest payments were charged to this account electronically.

Carter contends that the loan is usurious because he was denominated a "borrower" in the loan agreement and the rate of interest charged was in excess of 10% per annum. R.J.C.E. contends that the loan is usurious because the $2,000 advanced as a loan commitment fee constituted interest, and because the sum of the advanced fee and the first regular interest payment exceeded the maximum corporate interest rate of 1½% per month.

The four instruments executed in connection with this loan transaction bear the same date and relate to the same transaction. They must be construed together. It is well settled that separate instruments contemporaneously executed as part of the same transaction and relating to the same subject matter will be construed together as a single transaction. *Rudes v. Field*, 146 Tex. 133, 204 S.W.2d 5 (1947); *Board of Insurance Commissioners v. Great Southern Life Insurance Co.*, 150 Tex. 258, 239 S.W.2d 803 (1951).

No one phrase, sentence or section of a contract should be isolated from its setting and considered apart from the other provisions. *Guardian Trust Co. v. Bauereisen*, 132 Tex. 396, 121 S.W.2d 579 (1938).

Where an unambiguous writing has been entered into between the parties courts will give effect to the intention of the parties as expressed, or as is apparent in the writing, for it is the objective, not subjective, intent that controls. Where a question relating to the construction of a contract is presented, the court will take the wording of the instrument, consider the same in the light of the surrounding circumstances, and apply the pertinent rules of construction thereto and thus settle the meaning of the contract. In interpreting contracts we seek to ascertain the intent of the parties as expressed or apparent in the writing. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515 (Tex.1968).

A lender may lawfully require, as a condition to making a loan, that the loan be made to a corporation rather than to an individual borrower, and such a condition does not, in itself, make the transaction usurious, even though the purpose of the requirement is to permit the lender to charge a higher rate of interest. The requirement of a lender that the individual applicant guarantee payment of a corporate loan does not render the loan transaction usurious. The defense of usury is not available to the guarantor of a corporate debt. *Houston Furniture Distributors, Inc. v. Bank of Woodlake, N. A.*, 562 S.W.2d 880

(Tex.Civ.App.—Houston [1st Dist.] 1978, no writ).

█ With these principles in mind we approach the examination of the four instruments which together constitute the contract between these parties. Carter points to the loan agreement which begins:

This loan agreement dated May 16, 1974 made by and between:

(1) R.J. Carter Enterprises, Inc. and R.J. Carter, Individually ("The Borrower", whether one or more and jointly and severally, if more than one); and

(2) Greenway Bank & Trust of Houston, a Texas Banking Corporation domiciled in Houston, Texas, acting herein by and through its proper officers ("The Interim Lender"); . . .

The loan agreement then provides that the "borrower" has applied for a construction loan in the amount of $200,000.00, which loan shall be evidenced by a promissory note in the form attached and shall be secured by the Deed of Trust and Security Agreement referred to in such promissory note covering, among other properties, the building site.

The term "borrower" is used throughout this instrument to refer to the entity to which the bank contracts to make a loan and in describing the duties of that entity. This instrument evidences an agreement on the part of the bank to make a loan to R.J. Carter Enterprises, Inc. and R.J. Carter, Individually, as a joint obligation, but it is qualified, explained, and clarified by the other instruments.

The loan agreement indicated that Greenway was willing to loan money on the following conditions: (1) the indebtedness was to be evidenced by a note; (2) this note was to be personally guaranteed by Carter; (3) Carter was to be the agent of the corporation for disbursements and services; (4) the security for the indebtedness was to be a deed of trust; (5) there would be a commitment fee of $2,000.00 paid upon the first draw; (6) advances would be made as work progressed subject to certain conditions and; (7) Greenway agreed to loan an amount no greater than $200,000.00. The terms of the loan are found only in the note attached to the agreement. It provides all the pertinent terms of the obligation. R.J. C.E. is the named maker. The guaranty contract spelled out the individual obligation of Carter to guarantee the payment of the note executed by R.J.C.E. Title to the real property which served as security for the loan was in the name of R.J.C.E., and the deed of trust securing the note was executed by the corporation.

When these instruments are construed together the ambiguity created by the use of the term "borrower" in the loan agreement is clarified. The bank was making and agreeing to make a construction loan to R.J.C.E., which was to be, and was, guaranteed by Carter individually. This construction of the loan agreement is reinforced by the surrounding circumstances. The loan agreement provided that "the borrower" furnished the lender proof that it had a permanent loan commitment. There is evidence that prior to the signing of the loan agreement R.J.C.E. had secured such a permanent loan commitment. The bank had on one previous occasion made an interim construction loan to R.J.C.E. and had required Carter to guarantee the loan in his individual capacity. Mr. Carter had testified that the corporation purchased a certain tract of land as a site for a certain building to be erected by the corporation and that the corporation needed the $200,-000.00 as interim financing to build the apartments. He further testified that at the time he borrowed the $200,000.00 from the Greenway Bank it was his intention that the $200,000.00 would be used by the corporation in building the apartments. The testimony of Mr. Sparks, who negotiated the agreement and prepared it, that R.J. C.E. and Carter were named "borrowers" only to indicate that Carter had been appointed by R.J.C.E. to act as its agent to deal with the bank, was not denied by Mr. Carter.

The parties intended the obligation to be that of the corporation, and this intention can be determined from the language of the written instruments. Under these circum-

stances Article 1302–2.09, Tex.Rev.Civ.Stat. Ann., is applicable to this loan. There is no evidence to establish that interest in excess of one and one-half per cent per month was charged or collected.

Special issue No. 1 submitted to the jury reads "who do you find from a preponderance of the evidence contracted with the defendant, Greenway Bank and Trust to pay the principal and interest on the May 16, 1974 loan?" In answer to this issue the jury found that both R.J. Carter Enterprises, Inc., and R.J. Carter, Individually contracted to pay the principal and interest on the loan. No instruction was given in connection with this issue and the jury might properly have found that the corporation was liable to pay the principal and interest to the bank because it signed the promissory note and that R.J. Carter individually was responsible for paying the principal and interest on the loan because he signed the guaranty agreement, which so provided. From the written instruments in evidence we have determined as a matter of law that the bank made the May 16, 1974, loan to the corporation and not to R.J. Carter, Individually. The trial court did not err in disregarding the jury's answer to special issue No. 1. *Universal Metals and Machinery, Inc. v. Bohart*, 539 S.W.2d 874 (Tex.1976).

■■■ The trial court entered its judgment n. o. v. based upon a motion asking only that special issue No. 1 be disregarded and specifying as reasons for the court to take such action the bank's contention that there was no evidence to support the answer of the jury; that the issue was immaterial in that it submitted a legal issue; and that such issue was not a controlling issue because the proper issue to submit, where the loan documents are not usurious on their face, is whether there existed any agreement, device or subterfuge to charge usury. The judgment entered by the trial court recites that this motion was sustained.

By entering its judgment the trial court gave effect to the jury's answer to special issue No. 2 by which the jury failed to find that the $2,000.00 loan commitment fee was interest. The parties have stipulated that in the event the jury failed to find that the $2,000.00 commitment fee was interest, there was no interest paid in excess of one and one-half per cent per month. The trial court properly entered a take nothing judgment based on the answer to special issue No. 2. *Hines v. Parks*, 128 Tex. 289, 96 S.W.2d 970 (1936); *French v. Bank of the Southwest National Association, Houston*, 422 S.W.2d 1 (Tex.Civ.App.—Houston [1st Dist.] writ ref'd n. r. e.).

The Supreme Court stated that:

[W]here the trial court has disregarded a finding of the jury, the judgment should recite the filing of proper motion, that reasonable notice was given, that a hearing was had, and that the parties appeared in person or by attorney; and it should declare the action of the court on the motion, as well as the entry of judgment after disposition of the motion.

*Hines v. Parks*, supra, 96 S.W.2d at 973. The appellant cites this case in support of its contention that the judgment of the trial court should be reversed because it does not recite all of these matters. The appellants, however, do not complain that the appellee failed to give reasonable notice of its motion for judgment notwithstanding the verdict, or that there was no hearing on the motion. The language previously quoted from *Hines v. Parks* was a recommendation by the court and not a requirement for a valid judgment. The question is not whether the matters stated appear in the judgment, but whether those matters occurred during the trial. The burden is still on the appellant to prove that the trial court erred in failing to require, for example, proper notice of the hearing on the motion for judgment n. o. v. and that such failure was calculated to cause and probably did cause a rendition of an improper judgment.

The trial court properly refused to prepare findings of fact and conclusions of law because the case was submitted to a jury on special issues. *Ditto v. Ditto Investment Company*, 158 Tex. 104, 309 S.W.2d 219 (1958); *Fancher v. Cadwell*, 159 Tex. 8, 314 S.W.2d 820 (1958).

The trial court properly excluded evidence that at the date of the loan the corporate charter of R.J. Carter Enterprises, Inc., had been forfeited by the Secretary of State for nonpayment of franchise taxes. The validity of contracts of such corporations executed while doing business after such forfeiture is not effected thereby. The statute is a revenue measure, and the penalty imposed for violation is to deny to the offending corporation the right to prosecute or defend in the courts. *Real Estate-Land Title & Trust Co. v. Dildy*, 92 S.W.2d 318 (Tex.Civ.App.—Austin 1936, writ ref'd); *Greig v. First National Bank of San Angelo*, 511 S.W.2d 86 (Tex.Civ.App.—Beaumont 1974, writ ref'd n. r. e.). In providing that the corporation could not defend a suit brought against it, it would seem that the statute authorizes suits against a corporation to enforce its contracts.

After a careful consideration of all of the points of error presented by the appellants, we have determined that reversible error is not present in this case. Accordingly the judgment of the trial court is affirmed.