John R. STANLEY, Appellant,

v.

CONNER CONSTRUCTION CO., Appellee.

No. 7062.

Court of Appeals of Texas, El Paso.

April 13, 1983.

John C. Nabors, J. Michael Dorman, Lidell, Sapp, Zivley, Brown & LaBoon, Houston, for appellant.

William M. Harman, Harman & Harman, Allen R. Stroder, Odessa, for appellee.

Before STEPHEN F. PRESLAR, C.J., and WARD and OSBORN, JJ.

## OPINION

WARD, Justice.

This is a usury case. The Plaintiff sued for usury penalties claiming that he was a comaker on a note executed by a corporation that he controlled. The trial court directed a verdict in favor of the Defendant, holding as a matter of law that the Plaintiff was a guarantor on the corporation note and could not recover because of the prohibition contained in Article 1302–2.-09, Tex.Rev.Civ.Stat.Ann. We affirm.

John R. Stanley was the president and sole stockholder of Southern Pipe Line Corporation. In 1974, Southern contracted with Conner Construction Co. for the purpose of building a pipeline. Southern, by the construction, became indebted to Conner Construction Co. and to finance Southern and to enable it to have an additional extension constructed to its pipeline, three written instruments, all dated May 30, 1975, were executed. One was a letter agreement executed by Conner Construction Co., Southern Pipe Line Corporation by John R. Stanley, President and by John R. Stanley, individually. The second was a promissory note for $1,150,000.00 payable to the order of Conner Construction Co., it being executed by Southern Pipe Line Corporation, a Texas corporation, by John R. Stanley, President and John R. Stanley, individually.

The third was a deed of trust securing the promissory note.

The letter agreement provided that: (1) it was made as a supplement to the original pipeline construction contract between Southern Pipe Line Corporation and Conner Construction Co. as contractor; (2) Southern Pipe Line Corporation had initially contracted with Conner Construction Co. to extend the pipeline; (3) payment for the work had not been paid the contractor by Southern Pipe Line Corporation; (4) Southern Pipe Line Corporation desired a second extension of the pipeline for approximately twenty miles and Conner Construction Co. would do the work as contractor; and (5) the amounts past due the contractor plus the estimated construction costs for the second extension of twenty miles would total $1,150,000.00 plus interest. The letter agreement provided that, to secure the payment of the amounts due or to become due the contractor, the company would execute a real estate lien note in the amount of $1,150,000.00 bearing interest at the rate of one percent per month on the unpaid balance, and the note would be secured by a deed of trust lien on the pipeline right-of-way together with all improvements placed thereon, a copy of the deed of trust and description of the pipeline contained therein being attached as an exhibit. It also stated that the note would provide for payments of $100,000.00 per month and, in this regard, the contract stated the following: "[t]imely payments on said note are of the essence and to arrange for such timely payments, Southern Pipe Line Corporation will provide Contractor with twelve (12) signed and dated checks drawn on Southern Pipe Line Corporation, each in the amount of $100,000, and this Letter Agreement will constitute Contractor's authorization to present those checks for payment on the dates indicated." Southern Pipe Line Corporation represented and warranted that it had secured and would provide pipeline right-of-way for the construction work, that it had purchased the pipe, and that it should be timely delivered to the contractor on the right-of-way free and clear of any and all indebtedness. The agreement then provided as follows: "John R. Stanley will personally and individually guarantee this Contract and co-sign the real estate lien note." As previously stated, the letter agreement was executed by Southern Pipe Line Corporation by John R. Stanley, President and John R. Stanley, individually.

The deed of trust was executed by Southern Pipeline Corporation by John R. Stanley, President, stating it was the security for the payment of a promissory note in the amount of $1,150,000.00 which note was executed by Southern Pipe Line Corporation.

The promissory note in the amount of $1,150,000.00 which was signed by Southern Pipe Line Corporation, a Texas corporation, by John R. Stanley, President and John R. Stanley, individually, provides at the beginning as follows: "[F]OR VALUE RECEIVED, I, WE, or either of us, as principals, promise to pay to the order of CONNER CONSTRUCTION CO. . . . ." The interest rate was one percent per month on the unpaid balance.

As provided for in the letter agreement, Conner Construction Co. was provided with the agreed twelve pre-dated installment payment checks, the first eleven being in the amount of $100,000.00 each. The checks, instead of being drawn on Southern Pipe Line Corporation, were drawn on Gasland, Inc. At trial, it was explained that Gasland, Inc. was actually the holding company of Southern Pipe Line Corporation.

Thereafter, the additional pipeline was constructed for Southern Pipe Line Corporation. As to the predated checks that were given to Conner Construction Co., only the first four that came due were ever paid—a stop order being issued against the payment of the other eight outstanding checks.

By his suit, the Plaintiff contends that the letter agreement and real estate lien note conclusively established as a matter of law that Conner Construction Co. charged and contracted with John R. Stanley for interest in excess of the ten percent maximum rate allowed and that he was therefore entitled to recover two times the inter-

est charged or contracted for in the note plus reasonable attorney's fees. In this regard, requests for admissions conclusively established that the total interest contracted for and charged under the real estate lien note was $76,198.39. The parties stipulated that if Stanley prevailed in the suit the amount of reasonable attorney's fees to which he would be entitled was the sum of $15,000.00.

The Defendant pled in its answer and contended at trial that John R. Stanley signed the real estate lien note merely guaranteeing the obligation of Southern and was therefore prohibited from asserting a claim of usury. Over the Plaintiff's objection, the trial court allowed Jack Conner, the President of Conner Construction Co., to testify regarding the negotiations leading up to the execution of the letter agreement and note and that John R. Stanley was intended only as a guarantor of Southern's indebtedness. At the close of the evidence, both parties moved for an instructed verdict. It was the Defendant's motion for instructed verdict which was granted, that motion contending that the letter agreement and note plus other documentary and oral evidence established as a matter of law that the parties intended John R. Stanley to sign only as a guarantor of Southern's debt and therefore his usury claim was precluded by Article 1302–2.09.

■ At this point, we note that the rate of interest charged was not illegal for a corporate borrower and, further, that a claim of usury would then not be available to the guarantor of the corporate debt. Article 1302–2.09. Under the terms of the statute, where a corporation agrees to pay interest at a rate permitted, "the claim or defense of usury by such corporation, its successors, guarantors . . . is prohibited." This prohibition against the assertion of the claim of usury by the guarantor applies even though the guarantor is an individual who as against the holder of the note is primarily liable. *Universal Metals and Machinery, Inc. v. Bohart,* 539 S.W.2d 874, 879 (Tex.1976).

■ We also note that the three instruments, all executed in connection with the transaction and bearing the same date, must be construed together. It is settled that separate instruments executed at the same time as part of the same transaction will be construed together as a single transaction. *R.J. Carter Enterprises, Inc. v. Greenway Bank & Trust of Houston,* 615 S.W.2d 826 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). In that case, the rule was applied to a transaction similar to the one before us where the question to be decided was the true nature of the personal obligation of the corporate president who was designated as "borrower" in one of the four instruments executed in connection with a corporate loan. The designation of "borrower" was the foundation for the president's claim for usury, and that claim was rejected in the face of the clear indication of the four instruments that the corporation was the true borrower and the president only a guarantor.

■ Appellant's first point complains of the trial court's action in permitting the introduction of testimony by Jack Conner of the negotiations leading up to the instruments and that John R. Stanley was intended to merely guarantee corporate indebtedness. Appellant contends that the letter agreement and real estate lien note were unambiguous and the parol evidence was inadmissible to vary the effect of the instruments that Stanley signed the note in his individual capacity as a borrower.

Tex.Bus. & Com.Code Ann. sec. 3.415(c) (1968) provides: "[a]s against a holder in due course and without notice of accommodation oral proof of the accommodation is not admissible to give the accommodation party the benefit of discharges dependent on his character as such. In other cases the accommodation character may be shown by oral proof."

In the determination of the character of the Appellant's status as a guarantor of the corporate loan in the usury context, the evidence was admissible. The fact that he was a comaker of the note does not prevent him from being an accommodation party.

*Pinemont Bank v. DuCroz,* 528 S.W.2d 877 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.). The first point is overruled.

■ Appellant's second point is to the effect that the trial court erred in admitting the checks drawn by Gasland, Inc. payable to Conner Construction Co. and Conner's testimony regarding receipt and cashing of said checks on the ground that the evidence was irrelevant and immaterial. The letter agreement and the checks executed pursuant to the agreement are part of the same transaction with respect to the promissory note. Testimony as to the receipt and cashing of the checks did not vary or contradict the written agreement. They were admissible to show that the corporation was the true borrower and that Stanley was a guarantor of the loan in the usury context contained in Article 1302–2.09. The point is overruled.

By Appellant's third point of error, the contention is made that the trial court erred in granting the defendant's motion for instructed verdict because the admissible evidence conclusively established as a matter of law that Stanley signed the real estate lien note as a joint maker in his individual capacity and that he is charged with and contracted for payment of usurious interest and therefore was entitled to statutory penalties as a result thereof. The Appellant argues that the letter agreement and note, when read together, conclusively establish that Stanley executed the note as a joint maker in his individual capacity and that the liability of the Appellee for the usury was thereby established. The fallacy of the argument is that in the context of the usury statute it is the borrower for whose protection the usury laws are designed. The fact that the Appellant signed the note as a comaker does not make him the borrower. From the only evidence before us, the borrower in this case was Southern Pipe Line Corporation, and the guarantor within the terms of the usury statute was John R. Stanley.

The Supreme Court in *Universal Metals & Machinery, Inc. v. Bohart,* 539 S.W.2d 874 (1976), faced a similar problem although the status of the guarantor in that case was clearer as they were so designated as guarantors in the note. The significance was the following language at 879:

We have already held that the Boharts were guarantors and the prohibition of the claim or defense of usury expressed in the quoted article extends to guarantors of all kinds, .... This was explained in *E'Town Shopping Center, Inc. v. Lexington Finance Co.,* 436 S.W.2d 267, 269 (Ky.Ct.App.1969):

Conceding, as an explanatory note following this subsection [3.416] of the UCC says, that the liability of a guarantor is made the same as that of a co-maker, it does not follow that he is in fact a co-maker, and certainly he is not the borrower for whose protection the usury laws were designed. It appears to us that the basic purpose of UCC sec. 3–416(1) is to put one who is technically a "guarantor" in the same position as a surety with respect to enforceability of the obligation without first proceeding against the principal. The liability of a surety is of course commensurate with that of its principal, and if the defense of usury is not available to the principal, it is not available to the surety....

In *V.I.P. Commercial Contractors v. Alkas,* 553 S.W.2d 656 (Tex.Civ.App.—San Antonio 1977, no writ), the corporation president signed the notes for the corporation as president and then in his individual capacity. The corporate officer asserted the claim of usury by claiming he was no more than "an accommodation maker" and not a guarantor of a corporate obligation. The court, citing *Universal Metals and Machinery, Inc. v. Bohart,* supra, concluded that the corporate officer had no basis for a valid usury defense or claim. The court held that the accommodation makers may not assert that the underlying loan transaction is usurious when the corporate party accommodated cannot do so, and the court characterized an accommodation maker's contract as one of suretyship rather than a joint obligation.

The court stated the following at 658:

Although accommodation makers are popularly referred to as "co-makers," their contract is one of suretyship and should be distinguished from the contract of a joint maker. According to sec. 3.415(a), Tex.Bus. & Comm.Code Ann. (1968), an accommodation party is one who signs an instrument in any capacity for the purpose of lending his name to another party to the instrument. According to Comment 1 accompanying this section, an accommodation party "is always a surety (which includes a guarantor), and it is his only distinguishing feature." Both guarantors and accommodation makers stand on the same footing with respect to the claim or defense of usury.

In summation, Art. 1302–2.09 does not explicitly state that accommodation makers cannot assert a claim or defense of usury. Despite problems of nomenclature, it should make no difference whether the sureties of a corporation are labeled as guarantors of payment, guarantors of collection or accommodation makers in the context of a claim for usury since guarantors and accommodation makers stand on the same footing with respect to primary liability on the instrument. Consequently, their position should be the same in the context of a claim of usury. This argument was originally made by Dorsaneo in his article "Creditors' Rights," 31 Sw.L.J. 213 at 231. This is essentially what the Supreme Court concluded in Universal Metals and Machinery, supra, when it stated that the term "guarantor" in Art. 1302–2.09 included "guarantors of all kinds."

Here, the evidence was undisputed that the borrower was the corporation and Stanley was the guarantor. The point is overruled.

We have considered all of the Appellant's points and they are overruled. The judgment of the trial court is affirmed.