OPINION OF THE COURT
Margaret Gammer, J.
This action was tried before me without a jury on October 25, and November 13, 1984. Plaintiff’s complaint states two causes of action. The first alleges that defendant failed, after demand, to repay plaintiff $15,000 plus interest due under a promissory note. The second seeks recovery of the principal amount of that note plus punitive damages on a claim of detrimental reliance. Defendant’s amended answer contained a general denial and raised three affirmative defenses, to wit: that the transaction was void as usurious; that defendant had acted as an agent for a named principal; and that the transaction constituted an investment by plaintiff subject to any profits earned or losses sustained.
At the conclusion of the trial, pursuant to a stipulation between the parties, this court reserved decision pending translation by an official court interpreter of the Hebrew-Aramaic document which forms the basis of this lawsuit.
That translation was submitted to the court on February 4, *222 1985 and copies were thereafter mailed to counsel for the parties, who have not contended it was in any respect inaccurate.
After full consideration of all the testimony and other evidence admitted at trial, including the translated document, as well as the arguments of counsel, the court makes the following findings of fact and conclusions of law:
FINDINGS OF FACT
On or about April 20, 1983,* in the synagogue attended by the parties, who have known each other for 10 or 15 years, plaintiff gave defendant $15,000 in cash which defendant agreed to repay within six months’ time. Defendant admits he never repaid this money.
Defendant claims that he borrowed the money for a third party, Elco Elevator Co., which was awaiting a postdated check in the same amount to come due. At the time defendant was Elco’s manager. Nathan Glick, Elco’s former president, testified on defendant’s behalf that he had asked defendant to borrow $15,000 against the check. However, defendant offered no credible evidence in support of his claim that he informed plaintiff he was acting on behalf of Elco or Glick in borrowing the money. Plaintiff did not recall a third-party check and denied any knowledge of Mr. Glick’s involvement in this matter until, he testified, about two years ago when defendant, who still had not repaid the $15,000, advised plaintiff to call Glick for the money.
Soon after receiving the funds from plaintiff, defendant, in his individual capacity, signed a Hebrew-Aramaic document called a "Better Iske” agreeing to repay the $15,000 to plaintiff under certain terms and conditions. Defendant supplied the form which he signed and it was also defendant who filled in all its blanks, including the amount of the loan, the "profit” of 24% per month, and the six-month loan period.
Defendant is an experienced businessman, well schooled in the Talmud and other matters of Jewish law. He testified that he was fully familiar with the form he had signed. He characterized it as a "standard text * * * hundreds of years old” *223 used to avoid the biblical injunction against the taking of interest.
Plaintiff’s complaint and bill of particulars refer to this document as a "note”. Rabbi Baruch Singer, plaintiff’s expert witness, testified that the "Better Iske” agreement has long been used by rabbinical organizations as a "standard form contract” employed in the parties’ religious community "when one party is lending money and the other party is borrowing money”.
Rabbi Singer testified that because Jewish law prohibits the taking of interest on a loan, "the form is intended in lieu of interest payments” to give the lender "a fixed percentage of the profits instead of interest.”
According to the court’s official translation of the document, defendant received "the sum of $15,000 as an [sic] business investment” from plaintiff and obligated himself to share his "profit” with plaintiff. According to this document (but not the testimony), "in the event of a loss, only two trustworthy witnesses shall be believed. In the event of a profit [defendant] shall be believed only upon taking a solemn oath.”
In addition to the above provisions, the agreement imposed "a condition * * * specifically made” that plaintiff’s "share of profit” would be "24% per month” and that plaintiff "shall not be able to withdraw his share * * * before six months” time. Plaintiff testified, however, that he did not agree to share defendant’s losses and that plaintiff was to repay the $15,000 unconditionally, even if there were no profit.
In Rabbi Singer’s expert opinion, defendant was bound by the agreement to pay "24% interest” (he used that word) until there was sworn testimony from two witnesses that there was no profit, at which point the 24% "interest” would stop running. He stated that whether defendant’s "business succeeds or fails” and even if the "money is entirely lost”, defendant is required to pay back "the entire principal plus 24% interest — 24% of the profit; 24% of the loan * * * The profit is considered on the $15,000.” Thus, he noted, even if the business made only $1, the borrower must nevertheless pay back 24% on the loan amount (here, $15,000), not 24% of $1. Rabbi Singer testified emphatically, furthermore, that the agreement did not create a joint venture or partnership. Yet, despite his repeated use of the above-quoted characterizations of the transaction, it is "done”, he said, “specifically not to pay interest.”
*224 CONCLUSIONS OF LAW
General Obligations Law § 5-501 (2) states, in pertinent part, that ”[n]o person * * * shall, directly or indirectly, charge, take or receive any money * * * as interest on the loan of forbearance of any money * * * at a rate exceeding the [lawfully prescribed] rate”. When the transaction in issue here was made, the maximum lawful annual interest rate on loans was 10.5%. (General Obligations Law § 5-501 [1]; Banking Law § 14-a; NY State Banking Bd Regulations, 3 NYCRR 4.1, eff Feb. 1, 1980.) Any loan made at an interest rate higher than the one prescribed is "void”. (General Obligations Law § 5-511 [1].)
General Obligations Law § 5-521 (1) provides that "[n]o corporation shall * * * interpose the defense of usury in any action.” This, however, is not a blanket prohibition. The availability of the defense rests upon the purpose for which the loan was made. Thus, on the one hand, if a loan is "in fact, although not in form, made to an individual guarantor to discharge his personal obligations, and not in furtherance of a corporate or personal enterprise, the individual guarantor may interpose the defense of usury * * * On the other hand, where an individual borrows money through a shell corporation to further his own business or commercial enterprise, the defense of usury is not available.” (Schneider v Phelps, 41 NY2d 238, 242.)
Substance and not form must control. (See, e.g., Cusick v Ifshin, 70 Misc 2d 564, affd 73 Misc 2d 127.) A transaction must be considered in its totality and judged by its real character, rather than by the name, color, or form which the parties assign to it. (Lester v Levick, 50 AD2d 860, 862-863, citing Quackenbos v Sayer, 62 NY 344.) If the facts as alleged and established reveal the transaction to be usurious, the form is irrelevant. (Schanz v Sotscheck, 160 App Div 798, 801; see also, Durst v Abrash, 22 AD2d 39, affd 17 NY2d 445.) Where the facts reveal that a lender intends to extract a rate of interest in excess of that allowed by law, the loan is usurious, even if there was no specific intent to violate the usury laws. (Hammond v Marrano, 88 AD2d 758; Matter of Dane, 55 AD2d 224; Lester v Levick, supra.)
An analysis of the substantive terms of the "Better Iske” herein as interpreted by the parties and their witnesses at trial reveals that the transaction was a loan (not an "investment”) and that plaintiffs clear intent was to extract a higher *225 rate of interest on this loan than is permitted by law. (Cf. Leibovici v Rawicki, 57 Misc 2d 141 [where the funds were plainly treated as a joint investment].) Although nominally referred to as a "share of a profit”, in a document plaintiff characterized as a "note”, a key "condition * * * specifically made” obligated defendant to pay plaintiff a "fixed” monthly 24% sum calculated on the $15,000 principal, i.e., precisely the way interest is commonly calculated.
Nevertheless, this was hot the usual usurious transaction where an unscrupulous lender takes advantage of a needy borrower. (See, e.g., Hammond v Marrano, 88 AD2d 758, 759, supra.) There is no question that both parties knew in this case that defendant was borrowing the $15,000 for business purposes. Indeed, defendant’s central claim is that he told plaintiff from the outset that he was borrowing the money on behalf of an elevator company. (Although the court disbelieves defendant’s defense that he had acted as an agent for a named principal, it finds credible that he revealed the purpose for which the money was being borrowed.) While plaintiff denies that defendant told him he was borrowing the money for a particular company when he made the loan, he nevertheless knew that defendant was in the elevator business and admits knowing that defendant "was going to build elevators” with the money.
As the Court of Appeals noted in Schneider v Phelps (supra, at p 243), the purpose of "usury laws, from time immemorial, has been to protect desperately poor people from the consequences of their own desperation. Law-making authorities in almost all civilizations have recognized that the crush of financial burdens causes people to agree to almost any conditions of the lender and to consent to even the most improvident loans. Lenders, with the money, have all the leverage; borrowers, in dire need of money, have none. In recognizing this problem, the courts have drawn a delicate balance by both enforcing legitimate business obligations and by protecting impoverished debtors from improvident transactions drawn by lenders and brought on by dire personal financial stress.” The principal defense in this case rests on the claim that defendant requested the $15,000, not for his personal needs, but for a business in which he was the general manager. Under such circumstances, the policy and reasoning behind the General Obligations Law § 5-521 disallowance of a usury defense must govern.
Defendant has charted his own commercial course. Having *226 asked plaintiff to follow his direction, he cannot seek to shift sail just when the agreed journey is set to end. (See, Schaaf v Borsher, 82 AD2d 880.) Accordingly, the court holds that defendant is precluded from avoiding his $15,000 obligation to plaintiff by asserting the defense of usury. This ruling does not end the matter, however. While plaintiff is entitled to recover the principal, he correspondingly is prevented by his own admission from recovering interest.
In this otherwise heatedly contested case, there is one point upon which both parties agree: plaintiff’s strongly held religious beliefs, and the parties’ understanding, prohibit plaintiff from charging or accepting interest. Although both the verified complaint and plaintiff’s own expert witness characterized plaintiff’s claim as one to recover "interest”, as well as the $15,000 principal, plaintiff’s stance at trial was that the "Better Iske” was signed specifically to avoid the payment of interest. Notwithstanding the court’s disallowance here of defendant’s usury defense, and a finding that the document in question is a loan agreement, plaintiff has made it plain he neither wishes to nor can collect interest. Accordingly, none shall be awarded.
Plaintiff is granted judgment against defendant on the first cause of action in the amount of $15,000 plus all taxable costs and disbursements, but without prejudgment interest. The second cause of action is dismissed for failure of proof.
There having been no testimony which would bar plaintiff from receiving statutory interest on a judgment (as distinct from interest on a loan), any judgment to be based hereon shall bear interest at the statutory rate from the date of its entry.

 This is the date in our Roman calendar system which, according to plaintiffs bill of particulars, most closely corresponds to the Hebrew date (during the month of Iyar in the year 5740) recited in the document which is the subject of this lawsuit.